L. W. McCOY v. CAPE FEAR LUMBER COMPANY et al.

(Filed 28 October, 1908).

**1. Deeds and Conveyances—Title—Evidence—Common Source—. Rule of Convenience.**

When both parties to a controversy involving the title to land claim under the same person, it is not competent ·for either, as such claimant, to deny that the common grantor had title.

**2. Same.**

When the rule applies that parties claiming land under a common source are not required to show title beyond, it is not in strictness an application of the doctrine of estoppel, precluding a party from showing and establishing title superior to that of the common source and connecting himself with it; but the rule is established for the convenience of parties, relieving each from the necessity of proving title back of the common source when it is perfectly apparent that both of them are acting in recognition of that title as the true one.

**3. Same—Timber—Deeds.**

When, in an action for spoil and wrong to the land, the owner of the common source of title holds a deed purporting to convey to him the fee in lands, or he is in possession thereof claiming to own them, and then conveys a restricted interest therein, in this case the right to cut and remove therefrom timber of specified size, the grantee of the restricted interest cannot deny the title of the common source, so as to make it necessary for the grantor to show his title beyond, in order to recover.

149—1

McCoy *v.* Lumber Co.

**4. Same.**

Plaintiff. and his grantor were in possession.under deed of certain lands claiming them as absolute owners, one as reversioner and the other as life tenant. They conveyed to one of the defendants the right to cut and remove from the lands the timber of a specified size, who, in his turn, and after the death of the life tenant, entered into contract with the other defendant to cut and remove the timber for them. Thereafter, the plaintiff brought suit for damages arising from defendant's spoil and wrong to the land. *Held,* that, as according to his own deed, in evidence, the plaintiff was the owner of the lands, claiming them as his own, it was not necessary for him to prove his title further, in order to recover damages in a suit against those to whom he had conveyed the restricted estate.

Action tried before *Neal, J.,* and a jury, at March Term, 1908, of Pender County.

There was evidence. tending to show, that, under certain deeds from plaintiff, and those under whom he claimed, conveying to defendants the standing timber of certain dimensions, within a given boundary of land, with the right to enter, cut and remove same, said defendants or·their grantees had entered and cut the timber on said land not included in their deed or contract, and had wrongfully committed other spoil and injury to said land not contemplated or authorized by said deed.

Under the charge of the Court, the jury rendered the following verdict:-

"1st. 'Is the plaintiff the owner of the lands and premises described in the complaint?'

Answer: 'Yes.'

2d. 'Did the defendant, C. W. Mitchell and W. P. Taylor, trading· as Mitchell & Taylor, unlawfully and wrongfully cut and remove timber, cross ties, wood, and otherwise injure the plaintiff as alleged in the complaint?'

Answer: 'Yes.'

3d. 'Did the defendant, New Hanover Shingle Company, unlawfully and wrongfully, cut and·remove timber, cross ties

and wood, and otherwise injure the plaintiff as alleged in the complaint ?'

Answer: 'Yes.'

4th. 'What damage is the plaintiff entitled to recover ?'

Answer: '$1,000.00.' "

There was judgment, on the verdict, for plaintiff, and defendant excepted and appealed.

*R. G: Grady, E. K. Bryan* and *C. E. McCullen* for plaintiff.

*Meares* and *Ruark* for defendant.

Hoke, J., after stating the case: The objections chiefly urged to the validity of the trial below are for alleged errors in the determination of the 1st issue, that addressed to the plaintiff's ownership of the land on which the timber was situated. In *Whitaker v. Cawthorne,* 14 N. C., 390, *Daniel, J.,* delivering the opinion, quotes with approval the statement of Blackstone in reference to the term "land":

"If a man grant all his lands, he grants thereby all his mines of metal, and other fossils, his woods, his waters, and his house, as well as his fields and meadows."

And, in determining the ownership of this important species of property, it is a rule well recognized with us, that when both parties claim title under the same person it is not competent for either, as such claimant, to deny that such person had the title. *Fisher v. Mining Co.,* 94 N. C., 397; *Christenburg v. King,* 85 N. C., 230; *Worsley v. Johnson,* 50 N. C., 72; *Register v. Rowell,* 48 N. C., 312; *Johnston v. Watts,* 46 N. C., 228; *Ives v. Sawyer,* 20 N. C., 50. This is not in strictness an application of the doctrine of estoppel, but is a rule established for the convenience of parties in actions of this character, relieving them of the necessity of going back further than the common source when it is apparent that both parties are acting in recognition of this common source as the true title. *Warren v. Williford,* at present term.

In *Christenburg v. King, supra, Ashe, J.,* for the Court, in speaking of this rule, said: "It is well settled as an inflexible rule, that where both parties claim under the same person, neither of them can deny his right, and then, as between them, the elder is the better title and must prevail. To this rule there is an exception, when the defendant can show a better title outstanding, and has acquired it." And further on in the same opinion: "It must be borne in mind, that the general rule applicable to cases like this, is not strictly an estoppel, but a rule of justice and convenience adopted by the courts to relieve the plaintiff in ejectment from the necessity of going back behind the common source, from which he and the defendant derive title, and deducing his title by a chain of mesne conveyances from the State." Citing *Frey v. Ramsour,* 66 N. C., 466.

There is a class of cases which hold that when a party, having the weaker claim, is holding under a grant or deed from the common source, which creates a special interest in the property, or conveys a restricted estate therein, and nothing else appears but the production of such a grant or deed, the rule only applies to the extent of the interest created or to the amount of the estate conveyed. But this apparent limitation of the rule does not obtain when it is made to appear, further, that the owner of the common source of title, at the time he created the special interest in the property or conveyed the particular estate, had a deed for the land which purported to convey to him the fee, or was in the actual possession of the property claiming to own it. And especially is this true when the common grantor professes in his deed to be the true owner. An instance and illustration of this position will be found in *Worsley v. Johnson, supra,* where it was held: "Where a person made a deed to another, conveying a life-estate in an unoccupied lot of land, and such life-estate conveyed the premises in fee simple, it was held that such purchaser is not precluded, by the rule of practice in eject-

ment, from denying the title of the vendor, beyond the life-estate conveyed, and the heirs of such vendor, can only recover by showing, either that their ancestor had a deed for the land purporting to convey a fee, or that he was in possession of the premises claiming a fee." And this decision is recognized and approved in *Fisher v. Mining Co., supra.*

In such case the question is, did the common grantor profess to be the real owner, and the grantee of a limited estate take in recognition of that claim. Applying this principle to the facts presented, there is no error in the record which gives the defendant any just ground for complaint. It appears that, in 1893, one Fred McKoy, the grantor of plaintiff, and plaintiff himself, claiming the property as absolute owners, one as life-tenant and the other as reversioner and in possession of same, conveyed to the Cape Fear Lumber Company the standing timber on the land in question that would measure 10 inches and upwards, with the privilege to enter said land and cut and carry away the timber within twenty years from date, etc. "All the timber trees on our tract of land of the following dimensions," are the words of the instrument describing the interest conveyed. After the execution of this conveyance, to-wit, in 1903, and six or seven years after the death of Fred McKoy, the life-tenant, and leaving the plaintiff, according to the terms of his own deed, the sole owner of the land, the Cape Fear Company conveyed the property to the other defendants, stipulating that these grantees should cut and sell to said company all the merchantable timber on the land, which said grantees did not use, at a certain price per thousand, etc.; that these grantees entered, under this deed of the Cape Fear Lumber Company, and committed the spoil and wrong, and to the amount established against them by the verdict.

It will be thus seen that the Cape Fear Lumber Company bought the timber on the land in recognition of Fred McKoy, plaintiff's grantor, and plaintiff himself, as the true owners

CLOTHING CO. *v.* STADIEM.

of the property, and the defendants, having entered under and by virtue of these deeds from the Cape Fear Lumber Company, are also in under Fred McKoy and plaintiff himself; and in recognition of their title, unless and until they can show a better title outstanding, and connect themselves with it.

There is no reversible error in the record, and the judgment below will be

Affirmed.