D. T. VANCE v. BENJAMIN PRITCHARD and JOHN PRITCHARD.

(Filed 25 May, 1938.)

1. **Estates § 1—Title to surface and to minerals under the surface may be severed.**

Title to the surface of the earth and the minerals under the surface may be severed, and the minerals being a part of the realty, title thereto is governed by the ordinary rules governing title to real property, and when severed the title to the surface and to the minerals constitute two separate estates and the presumption that possession of the surface is possession of the subsoil containing the minerals does not exist.

2. **Adverse Possession § 3—When mineral rights have been severed, owner of surface can acquire no title to minerals by exclusive possession of the surface.**

When title to the mineral rights has been severed from title to the surface of the earth, the owner of the surface can acquire no title to the minerals by exclusive and continuous possession of the surface, and the owner of the minerals does not lose his title or possession by any length of nonuser, and may be disseized only by the actual taking of the minerals out of his possession.

3. **Ejectment § 9—**

Plaintiff in ejectment may establish title by connecting defendant with a common source of title and showing a better title from that source, and need not prove the title of the common grantor, since neither party may deny the title of their common grantor.

4. **Same—**

The rule that when plaintiff in ejectment establishes a common source of title, defendant may not deny the title of the common grantor, since he claims under it, does not apply to an estate reserved by the common grantor and thereby severed from the granted interest in the land.

5. **Same—When defendants' deed from common grantor reserves the mineral rights, defendants are not estopped to deny grantor's title to minerals.**

Plaintiff established record title to the mineral rights in question from a former owner, and for the purpose of establishing a common source of title, established defendants' chain of title from the same owner, but in defendants' chain of title the deed from the common grantor "excepted and reserved" the mineral rights, but such reservation was left out of *mesne* conveyances, and the deeds to defendants purported to convey the fee in the *locus in quo.* *Held:* The rule that defendant may not deny the title of the common grantor applies only to the quality and quantity of the estate conveyed, and since the deed from the common grantor in defendants' chain of title reserved the mineral rights, defendants are not estopped to deny the common grantor's title thereto.

**6. Deeds § 15—Definition of "exception" and "reservation" as used in deeds.**

An "exception" as used in deeds means some part of the estate not granted at all or withdrawn from the effect of the grant, while a "reservation" means something issuing or arising out of the thing granted, but the courts will not give strict technical interpretation of the words, but will look to the character and effect of the provisions and effect the obvious intention of the parties.

**7. Ejectment § 9—When plaintiff fails to show common source of title as to particular estate in dispute, burden remains on him to prove title.**

This action in ejectment involved title to mineral rights in the *locus in quo.* Plaintiff established record title thereto from a former owner, and in order to establish a common source of title, introduced in evidence defendants' chain of title from the same owner. The deed from the common grantor in defendants' chain of title expressly reserved and excepted the mineral rights, but such reservation was left out of *mesne* conveyances and the deeds to defendants purported to convey the fee, and defendants claimed the mineral rights by adverse possession for the required period both under color and without color. *Held:* Since plaintiff failed to show a common source of title as to the mineral estate in controversy, defendants are not estopped to deny the title to the minerals in the common grantor, and the burden on the issue remains on plaintiff, since he must rely for recovery on the strength of his own title, and an instruction that the burden was on defendants to prove by the greater weight of the evidence the adverse possession relied on by them, and that if defendants had failed to so satisfy the jury, the issue must be answered in' favor of plaintiff, is error.

**8. Appeal and Error § 41—**

When a new trial is awarded on one exception, other exceptions need not be considered.

SEAWELL, J., took no part in the consideration or decision of this case.

CLARKSON, J., dissenting.

APPEAL by defendants from *Clement, J.,* at October Term, 1937, of AVERY. New trial.

This was an action to establish plaintiff's title to the mineral and mining rights in three tracts of land, containing respectively 16⅝ acres, 25 acres, and 26½ acres.

Defendants denied plaintiff's title to the mineral interests in said land, and further alleged title in themselves by reason of 20 years adverse possession of said mineral interests, or seven years adverse possession under color of title.

Plaintiff offered evidence tending to show: (1) Conveyance, in 1912, by Toe River Land & Mining Company to Robert (Bob) Buchanan for 2,180 acres of land (including the *locus in quo*), "excepting and reserving a three-fourths undivided interest in and to the minerals on said land"; (2) deed, dated in 1917, from Bob Buchanan to D. T. Vance, the plaintiff, for said grantor's entire mineral interests in the described 2,180

acres of land; and (3) deed from the sheriff of Avery County under execution against Toe River Land & Mining Company, purporting to convey to plaintiff a three-fourths interest in all minerals in or on the described 2,180 acres of land.

For the purpose of connecting the defendants with the same source of title, the plaintiff offered in evidence the following deeds: (a) From Bob Buchanan to Jeremiah Pritchard, in 1912, for 145 acres (a part of the 2,180 acres and including the *locus in quo*), "reserving and excepting all mines and minerals, with right of ingress and egress. (b) From Jeremiah Pritchard to Walter Hughes, in 1917, for the same 145 acres of land, "reserving all mines and minerals, with right of ingress and egress." (c) From Bob Buchanan, in 1912, to John Pritchard for 26½ acres (included in 2,180-acre tract), "reserving and excepting all mines and minerals, with right of ingress and egress." (d) From Walter Hughes, in 1918, to John S. Pritchard for 16⅝ acres (included in the 145-acre tract) in fee simple, without reservation of minerals or mineral rights. (e) From Walter Hughes, in 1918, to Benjamin Pritchard for 25 acres (included in the 145-acre tract) in fee simple and without reservation of minerals or mineral rights. (f) From John Pritchard, in 1926, to Benjamin Pritchard for the 26½-acre tract, without reservation.

Defendants offered evidence tending to show adverse and continuous use and possession of the mineral interests in and on said lands for more than seven years, and for more than twenty years.

Among other things the court charged the jury as follows:

"The paper title that he (plaintiff) has offered in evidence here, nothing else appearing, would entitle the plaintiff to be declared the owner and entitled to the possession of the mining and mineral interests in this property. . . . The court instructs you that he has offered a chain of title here that would warrant you in answering that issue yes, unless you find that the defendants have acquired title to this property by adverse possession.

"Now, the thing for you to decide and the thing that you must find out from this evidence, is whether these defendants have held adversely under those deeds which are color of title.

"The burden is on the defendants to satisfy you by the greater weight of the evidence that they have acquired title to that land either under color of title for seven years or that they have held it adversely for a period of twenty years. . . . If they have failed to satisfy you by the greater weight of the evidence that they have held that land adversely for a period of twenty years without color of title and they have failed to satisfy you by the greater weight of the evidence that they have held it adversely under color of title for a period of seven years, then it would be your duty to answer that first issue yes."

Upon the issues submitted, the verdict of the jury was as follows:

"1. Is the plaintiff the owner and entitled to the immediate possession of the mineral and mining rights in the property alleged in the complaint? Answer: 'Yes.'

"2. What damage, if any, is the plaintiff entitled to recover? Answer: 'None.' "

From judgment on the verdict defendants appealed, assigning errors in the admission of testimony and in the charge of the court to the jury.

*McBee & McBee, J. V. Bowers, John R. Jones, and J. M. Brown for plaintiff.*

*Burke & Burke, Geo. M. Pritchard, and M. A. James for defendants.*

DEVIN, J. The title of the defendants to the surface rights in the land described in the pleadings is not controverted, but the plaintiff seeks to establish his right to the mineral and mining interests in said lands by virtue of deeds and reservations segregating the title to the minerals and mineral rights therein.

The defendants denied plaintiff's title to the mineral interests, and furthermore alleged that they had acquired title to said mineral interests by adverse possession, either under or without color of title, for the statutory periods.

The law as to the relative rights of parties, where mineral and surface rights in land have been severed, was succintly stated by this Court in *Hoilman v. Johnson,* 164 N. C., 268, 80 S. E., 249. It was there said: "It is well settled that the surface of the earth and the minerals under the surface may be severed by a deed, or reservation in a deed, and when so severed, they constitute two distinct estates. *Outlaw v. Gray,* 163 N. C., 325. The mineral interests being a part of the realty, the estate in them is subject to the ordinary rules of law governing the title to real property. The presumption that the party having possession of the surface has the possession of the subsoil containing the minerals does not exist when these rights are severed. *Armstrong v. Caldwell,* 53 Pa. St., 284. The owner of the surface can acquire no title to the minerals by exclusive and continuous possession of the surface, nor does the owner of the minerals lose his right or his possession by any length of nonuser. He must be disseized to lose his right, and there can be no disseizin by any act which does not actually take the minerals out of his possession."

It is well settled that one of the methods by which title to real property may be established is by connecting the defendant with a common source of title and showing a better title from that source. *Mobley v. Griffin,* 104 N. C., 112, 10 S. E., 142; *Prevatt v. Harrelson,* 132 N. C., 250, 43 S. E., 800; *Biggs v. Oxendine,* 207 N. C., 601, 178 S. E., 216.

This is the method which the plaintiff has pursued in the instant case. He offered conveyances purporting to show the derivation of his title to the described mineral interests, in 1912, from the Toe River Land & Mining Company and its grantee, Bob Buchanan, as a common source of title, and offered other deeds to show that from the same source defendants derived their title to the land. However, it will be noted that defendants do not claim the mineral interests in the land under the deed from the Toe River Land & Mining Company, or from Bob Buchanan, nor are they connected in title therewith as to the mineral rights. The mineral interests were expressly excepted by those grantors from the conveyances which they made to those under whom the defendants claim and own the surface rights. It was not until Walter Hughes made his deed, in 1918, to the defendants, and in 1926, when John Pritchard conveyed to Benjamin Pritchard, that the conveyances were made without reservation of minerals and mineral rights, and it was thus attempted to pass title to the entire interest in the land.

Even if plaintiff could connect defendants' chain of title to the mineral interests with the Toe River Land & Mining Company as a common source with his own, the principle stated in *Mobley v. Griffin, supra,* would not apply because of the distinction between a conveyance, in the one instance, and a reservation in the other, of severed interests in the land. Ordinarily the acceptance of a conveyance of land operates as a recognition of the title of the grantor, and where two claim under the same grantor, it is not competent for either to deny the grantor's title; and hence the rule that one who can show a title from the common source superior to that of his adversary, nothing else appearing, makes out a legal title and he need proceed no further to prove the title of the common grantor. But this rule has been held not to apply to the title to an estate or property reserved which is thereby severed from the granted interest in the land.

In *Fisher v. Mining Co.,* 94 N. C., 397, the plaintiffs claimed the minerals and mines as heirs of Chas. Fisher, and offered deeds showing that the defendant derived its title under a deed from Chas. Fisher wherein the minerals were excepted. The plaintiffs in that case contended that the acceptance of the deed by the grantee operated to prevent the defendant from denying the title of the grantor not only to the land conveyed but equally to the property reserved. This Court there said: "If the parties claimed the whole land, extended upward and downward, and all contained within its boundaries, or the same estate in the land, the estoppel would be operative, and the party having the superior title from the common source, would prevail. But such is not the case here. The conveyed and reserved parts are not one and the same thing. The grantor may have had himself, only an estate in the land to transfer, while the reserved minerals may have belonged to another. Precisely

such were the relations of the succeeding owners, each being capable of passing an estate in the land, and not in the mineral deposits below the surface. The estoppel is necessarily confined to the subject matter of the conveyance to which conflicting claims are asserted. There is no repugnancy or antagonism in them, and it is entirely consistent, that one party should have title to the mines, and the other to the lands outside of the mines. Hence, the titles are traced to a common, but not the same source. This view is in accord with adjudged cases."

On rehearing in the same case (*Fisher v. Mining Co.,* 97 N. C., 95) the holding in the former opinion was affirmed, and the Court further said: "It does not appear that either the plaintiffs or their ancestor, Charles Fisher, ever had title to the reserved minerals, which may have belonged to another, and as was said 'the estoppel is necessarily confined to the subject matter of the conveyance, to which conflicting claims are asserted'—in this case, to the land, and not the minerals."

"These cases rest upon the proposition that an estoppel arising out of the acceptance of a deed is restricted to the estate as well as to the *corpus* which it undertakes to transfer." *Fisher v. Mining Co.,* 94 N. C., 397 (401); *Hill v. Hill,* 176 N. C., 194, 96 S. E., 958; *Drake v. Howell,* 133 N. C., 162, 45 S. E., 539.

The deed from the Toe River Land & Mining Company with reference to the mineral rights used the words "excepting and reserving." While there is a distinction between "exception" and "reservation" as used in deeds, the former term meaning some part of the estate not granted at all, or withdrawn from the effect of the grant, and the latter something issuing or arising out of the thing granted, the terms are often used indiscriminately and frequently what purports to be a reservation has the force and effect of an exception when such appears to be the obvious intention of the parties. *Trust Co. v. Wyatt,* 189 N. C., 107, 126 S. E., 93; *Bond v. R. R.,* 127 N. C., 125, 37 S. E., 63; *Snoddy v. Bolen* (Mo.), 24 L. R. A., 507; *Pritchard v. Lewis* (Wis.), 1 L. R. A. (N. S.), 565.

The modern tendency of the courts has been to brush aside these fine distinctions and look to the character and effect of the provision itself. *Moore v. Griffin,* 72 Kan., 164; *Bodcaw Lumber Co. v. Goode* (Ark.), 29 A. L. R., 578, and note; 40 C. J., 971; 18 C. J., 341.

"Where the words 'reservation' and 'exception' are used together, without evincing any definite knowledge of their technical meaning, the intention of the parties must be ascertained from the instrument interpreted in the light of the surrounding circumstances." 18 C. J., 341.

But whether the words used in the deed from the Toe River Land & Mining Company to Buchanan be construed as an exception, or a reservation, or both, the plaintiff's evidence does not connect the defendants' claim of title to the mineral rights, which were "excepted and reserved" in that deed, with a common source, so as to estop defendants from

denying the title of the Land & Mining Company to those mineral rights upon which plaintiff's title depends and from which it is derived. The defendants claim title to the surface of the land under the Toe River Land & Mining Company's deed, but claim title to the mineral rights by adverse possession under color of the Hughes and Pritchard deeds for seven years, or without such color of title for twenty years.

Applying these principles of law, we conclude that the charge of the court below to the effect that the burden was upon the defendants to satisfy the jury by the greater weight of the evidence that they had acquired title by adverse possession, either under or without color of title, for the statutory periods, and that if defendants had failed to so satisfy the jury, they should answer the first issue "Yes," must be held for error and the defendants' exception thereto sustained, since the instruction given proceeds upon the improper assumption that the plaintiff under the evidence offered had shown a clear legal title to the mineral rights alleged.

The evidence here did not warrant the application of the principle set forth in *Power Co. v. Taylor,* 194 N. C., 231, 139 S. E., 381, and cases there cited, where instructions to the jury similar in effect to those in the instant case were held to be proper. In that case the plaintiff had shown a grant from the State and a connected chain of conveyances to itself, constituting a legal title, and defendant alleged and sought only to prove title in himself by adverse possession. There is an obvious distinction between the facts in that case and in the case at bar. Here the evidence may not be held sufficient to change the general rule that the burden of the issue is on the plaintiff, and that he must rely for recovery on the strength of his own title.

As the error pointed out is material and sufficient to require a new trial, we deem it unnecessary to discuss the other exceptions noted in the trial and brought forward in defendants' assignments of error.

New trial.

SEAWELL, J., took no part in the consideration or decision of this case.

CLARKSON, J., dissenting: Conceding that defendant owns the surface right in the land, where plaintiff traces to the same source the record titles of both plaintiff and defendant to the mineral interests in the land, and also establishes the chronological and record priority of his record title, is the burden thereby cast upon the defendant to satisfy the jury that he has acquired title by adverse possession? The majority answers "No." With this view I cannot agree.

What are the facts which plaintiff's evidence tended to establish? (1) The Toe River Land & Mining Company, owner of the fee simple, conveyed to Bob Buchanan the surface and a one-fourth undivided

interest in the mineral rights. (2) Plaintiff Vance bought from Buchanan his one-fourth undivided interest in the minerals, and at an execution sale secured the remaining three-fourths undivided mineral interests from the Toe River Land & Mining Company. Having rested his claim upon the original title of the Toe River Land & Mining Company, in part through a conveyance of Buchanan, plaintiff offered evidence tending to establish the following transactions, all later in time than the original conveyance of the Toe River Land & Mining Company to Buchanan: (A) Buchanan sold one tract to Jeremiah Pritchard, and another to John Pritchard, and Jeremiah Pritchard in turn sold to Walter Hughes; all of these deeds reserved the mineral interests. (B) Hughes sold to John S. Pritchard and Benjamin Pritchard, but, by failing to reserve the mineral interests, undertook to convey a fee simple title. (C) John Pritchard also sold to Benjamin Pritchard, and likewise failed to reserve the mineral interests. Thus, both Hughes and John Pritchard undertook to convey mineral interests which they did not possess. The record titles of the two defendants to the three tracts rest, by intervening conveyances, upon the assumption that Hughes possessed a fee simple title to these lands. However, this assumption fails; plaintiff's evidence tended to establish that Hughes had no title to the mineral interests which he purported to convey. By two unbroken chains the record titles of both plaintiff and defendant are derived from the Toe River Land & Mining Company. The apparent fact that Hughes, one of the intervening owners of the surface in defendants' chain, wrongfully attempted to convey mineral interests which he did not possess did not thereby break the chain of the record title. It did, however, destroy the possibility of defendants' proving a clear record title to the mining interests, as it then became apparent that Hughes had never received the mineral interests which had much earlier been severed and conveyed to plaintiff's predecessors in title. *Hoilman v. Johnson,* 164 N. C., 268.

Here, on this record, both record titles descend from the Toe River Land & Mining Company. This is not denied. That company by conveyance severed the mineral from the surface rights, thus creating two chains of title. This is not denied. One of these chains—the mineral title—is plaintiff's; the other chain—the surface title (which recently became color of title also as to the mineral interests)—is defendants'. This is admitted. Defendants can only show color of title to the mineral interests by attaching such a claim to the chain which shows their title to the surface. This is not contested. Thus, not alone did the evidence of plaintiff show this dominant title under the "common source" rule, but defendants' claim of adverse possession under color of title likewise bind defendants to the same chain of title which plaintiff showed was insufficient.

In the words of *Ashe, J.* (*Christenburg v. King,* 85 N. C., 230), quoted with approval by *Hoke, J.,* in *McCoy v. Lumber Co.,* 149 N. C., 1 (4), the rule of this jurisdiction is: " 'It is well settled as an inflexible rule, that where both parties claim under the same person, neither of them can deny his right, and then, as between them, the elder is the better title and must prevail. To this rule there is an exception, when the defendant can show a better title outstanding, and has acquired it.' "

Plaintiff relying upon this rule both his own and defendants' record titles to the common source—the Toe River Land & Mining Company— and in so doing established his as the elder title and therefore entitled to prevail. The majority opinion states that this rule does not apply where the fee simple has been severed and two or more competent estates has resulted because there is no estoppel operative in such cases. The error in this position is that the "common source" rule in North Carolina is not dependent upon estoppel. "It must be borne in mind that the general rule applicable to cases like this, is not strictly an estoppel, but a rule of justice and convenience adopted by the courts to relieve the plaintiff in ejectment from the necessity of going back behind the common source, from which he and defendant derive title, and deducing his title by a chain of *mesne* conveyances from the State. *Frey v. Ramsour,* 66 N. C., 466." *Christenburg v. King,* 85 N. C., 230 (234).

In *McCoy v. Lumber Co., supra,* p. 3, it is said: "This is not in strictness an application of the doctrine of estoppel, but is a rule established for the convenience of parties in actions of this character, relieving them of the necessity of going back further than the common source when it is apparent that both parties are acting in recognition of this common source as the true title."

To the same effect, see *Howell v. Shaw,* 183 N. C., 460, 462. Further, "It is not a case strictly of estoppel, but a well settled rule of evidence, founded on justice and convenience. . . . It is the possession of the defendant, under his claim of right or title from the common source, whether by deed or lease, or what is the legal equivalent of a lease, a contract of purchase, that determines the application of the rule as shown by the cases last cited. This does not deprive the defendant of the right to show that he has a better title, even as between the parties claiming only from a common source, or that he has, in some other way, acquired the superior title. *The authorities merely declare that a plaintiff's case is made out when all that appears is that he and the defendant claim under the same common grantor, and the question is one of the state of proof only.*" (Italics mine.) *Bowen v. Perkins,* 154 N. C., 449, 452. Clearly, under our cases, this case is properly not determinable upon reasoning based upon the doctrine of estoppel, but rather upon the effect of a rule of convenience long accepted as a valid means of proving title.

*Fisher v. Mining Co.,* 94 N. C., 397, relied upon by the majority, is not inconsistent with the view here expressed. The question there involved was not the "common source" rule. There the opposing chain of title was offered, not to show "common source," but specifically "to estop the defendant." See p. 398.

In the present case there was no plea of estoppel. Here defendant relied upon two deeds to show *color of title;* the moment these deeds were placed in evidence the defendants' claim attached to a chain running straight back to the original common grantor. In the *Fisher case, supra,* estoppel was pleaded and the court held that tracing title to the same source but not to a common source was insufficient to show estoppel. Not so here. In the present case there is no plea of estoppel; plaintiff merely relies upon an established rule of evidence and practice and the title so proved has been challenged as insufficient. In my opinion there is no place in this case for a discussion of the estoppel doctrine. This case should turn upon the "common source" rule and, in my opinion, plaintiff has fully complied with the requirements of this rule.

Having disposed of the theory of estoppel, it becomes equally clear that the mere fact that defendants' record claim to the minerals cannot be traced further back than Hughes is of no importance. What is important, and determinative of this case, is that defendants claim under Hughes, who in turn claims by *mesne* conveyances under plaintiff's ulterior grantor. Defendants claim under color of title. Color of title exists only by virtue of a deed or deeds. The deed under which defendants claim title is the last link in a record chain of title going back to plaintiff's grantor. In the words of *Montgomery, J.,* in *Ryan v. Martin,* 91 N. C., 464, 469: "If the defendant has the same source of title as the plaintiff, and no other, wherefore need the plaintiff go beyond that as to the defendant? Such an inquiry would be idle. It is plain that no injustice in such case could be done the defendant; and if the rule were otherwise, it might and would in many cases put the plaintiff to great inconvenience and much needless expense. . . . It is not necessary to show that the defendant has a complete title to the land; if there is no title paramount to it, it is sufficient to show that under a valid contract he claims to hold and has possession of the property under the common source. If the defendant has a bond for title, or other contract of purchase, or an unregistered deed for the land, and is in possession thereof, this will be sufficient evidence of a claim under the common source. *It will be presumed that he claims under such contract. The purpose is to show that he claims the property under the common source —that he admits his relation to it and claims under it, without regard to the sufficiency or perfectness of the title.*" (Italics mine.)

Plaintiff in relying upon this rule followed precisely the practice already approved by this Court. In *Warren v. Williford,* 148 N. C.,

474 (477), *Connor, J.,* wrote: "This rule of practice has been recognized and followed in this State too long to require discussion. The plaintiff, therefore, having shown a chain of title from R. G. Williford for the purpose of relieving himself of the necessity of showing title out of the State, introduced the deed from the sheriff to defendant, showing that he also claimed under Williford. This is a common and well settled practice in the trial of actions of ejectment in this State." There (as here) plaintiff showed the superior title of record in himself. There (as the Court should here) the procedure of plaintiff was approved. As was said by *Battle, J.,* in *Johnson v. Watts,* 46 N. C., 228 (231), once the common source of title has been shown by plaintiff, "The defendant, in a case like the present, can defend himself only by showing that he has a better title in himself than that of plaintiff's lessor, derived, either from the person from whom they both claim, or from some other person who had such better title." When plaintiff had offered evidence establishing the common source of title, he made out a *prima facie* title to the mineral interests. The burden of going forward then shifted to defendants. The burden of showing adverse possession rested upon the defendants. In the words of *Chief Justice Stacy,* "But, when the plaintiff has established a legal title to the premises, and the defendant undertakes to defeat a recovery by showing possession, adverse for the requisite period of time, either under or without color of title, the defense is an affirmative one in which the defendant *pro hac vice* becomes plaintiff, and he is required to establish it by the greater weight of the evidence." *Power Co. v. Taylor,* 194 N. C., 231 (233-4), and cases cited. The charge as to the burden of proof is in strict accord with that case. The defendants, in fact, recognized this burden and attempted to prove adverse possession, but, having failed to do so, the jury found against them. "The owner of the surface can acquire no title to the minerals by exclusion and continuous possession of the surface, nor does the owner of the minerals lose his right or his possession by any length of nonuser. He must be disseized to lose his right, and there can be no disseizin by any act which does not actually take the minerals out of his possession." *Hoilman v. Johnson,* 164 N. C., 268 (269). The facts as to the adverse possession were in doubt and, in my opinion, the trial judge properly left this question for the jury. His charge as to the burden of proof was challenged on this appeal. I think his charge in this respect was a correct exposition of the settled law in this jurisdiction.