PAUL B. COCKMAN v. PPG INDUSTRIES AND THE HARTFORD ACCIDENT AND INDEMNITY COMPANY

No. 8610IC571

(Filed 20 January 1987)

1. **Master and Servant §§ 65.2, 72— workers' compensation—permanent partial disability or total disability—election of remedy by employee**

The opinion and award of the Industrial Commission must be vacated where the Commission acted under a misapprehension of the law in feeling that it was bound to award benefits for permanent partial disability under N.C.G.S. § 97-31(23) for plaintiff's back injury and that it could not award benefits under N.C.G.S. § 97-29 for total disability, since N.C.G.S. § 97-29 and § 97-31 are alternate sources of compensation for an employee who suffers a

Cockman v. PPG Industries

disabling injury which is also included as a scheduled injury, and the injured worker is allowed to select the more favorable remedy.

**2. Master and Servant § 94.1— workers' compensation—reversal of Deputy Commissioner—new findings by Commission required**

When the Industrial Commission is about to reverse the decision of the Deputy Commissioner, the better practice is for the Commission to make all the findings and conclusions rather than to adopt the findings and conclusions of the hearing officer.

APPEAL by plaintiff from an opinion and award of the North Carolina Industrial Commission entered 20 February 1986. Heard in the Court of Appeals 12 November 1986.

This is a workers' compensation case wherein plaintiff seeks compensation for an injury arising out of an accident which occurred on 15 November 1983. Following a hearing on 28 May 1985, Deputy Commissioner Henry Burgwyn issued an opinion and award in which he found the following pertinent facts:

1. Plaintiff, age 58, was injured by accident on November 15, 1983. As a result of this injury, plaintiff went to see Dr. Thomas Presson, orthopaedic surgeon, on November 18, 1983.

2. Dr. Presson conducted an examination of the plaintiff who was experiencing severe pain and muscle weakness and diagnosed an acute ruptured disc. A subsequent CT scan confirmed this diagnosis at the L4-L5 level. On November 23, 1983, Dr. Presson performed surgery.

3. After the surgery the plaintiff received physical therapy, heat and some exercise. The surgery and subsequent treatment did not have the desired effect and the plaintiff continued to experience pain and discomfort.

4. Finally, by April of 1984 the pain had become so severe that Dr. Presson felt compelled to perform a second operation. In this operation a substantial amount of scar tissue was removed from the plaintiff's nerve roots. The plaintiff was given medication, a back brace and physical therapy.

5. The plaintiff continued to receive medical treatment through 1984, however his symptoms did not abate. These symptoms included severe pain in the back along with numb-

ness, pain and a burning sensation in the legs. The plaintiff was unable to stoop or squat, make quick movements, lift or even sit for more than a few hours without experiencing physical problems. Frequently the plaintiff was compelled by his discomfort to lie on the floor and in general, physical activity of any strenuous nature, compelled him to rest for hours and on occasion, days in order to recover.

6. The plaintiff was referred by Dr. Presson to Mike Hums, a vocational rehabilitation person with the Department of Human Resources, who worked briefly with the plaintiff in an effort to create a program for assisting the plaintiff in a return to the work force. Mr. Hums felt there was some reasonable expectation plaintiff could be returned to the work force; however, this was not based on medical knowledge nor did Mr. Hums have the opportunity to really evaluate the plaintiff's situation and devise a plan to help him return to work.

7. In addition to treating the plaintiff, Dr. Presson suggested that a series of tests be performed by Dr. Grubb in Chapel Hill. The purpose of these tests was to attempt to ascertain if additional surgical intervention or other medical techniques might be helpful to the plaintiff. After discussing this with Dr. Grubb, the plaintiff concluded that the type of the proposed testing and potential surgery offered only a marginal hope for improvement of his situation and therefore, declined to proceed with the additional testing.

8. The plaintiff's symptoms at the time of the hearing included pain in his back and legs, numbness and burning in his legs and the inability to lift objects or sit for long periods of time. The plaintiff's physical activity is limited to some walking and the most elementary of household chores. He has not worked since November 15, 1983.

9. The plaintiff is a high school graduate who lacks the education to do clerical work. Plaintiff was employed by the defendant as a truck driver.

10. In January 1985 Dr. Presson assigned the plaintiff a 20 percent permanent partial disability rating to his back. However, subsequently by letter Dr. Presson elaborated on

this rating and provided additional insight into the plaintiff's condition concluding that the plaintiff as a whole was 100 percent disabled. The 20 percent rating by Dr. Presson in August of 1985 was limited to the plaintiff's back impairment. In addition, the plaintiff has a substantial amount of impairment to his legs. The plaintiff has weakness, numbness and pain throughout his body, particularly in his back and legs. Sitting, lifting, bending, stooping and sudden movements are practically, if not functionally, impossible for the plaintiff to perform. The symptoms which the plaintiff suffers impairs the use of his extremities causing the plaintiff to be unable to work and earn any wages. The plaintiff is totally and permanently disabled.

11. The plaintiff reached maximum medical improvement on September 10, 1984 and had been temporarily totally disabled from November 15, 1983 through that date. Plaintiff's average weekly wage is $382.41 resulting in a compensation rate in excess of the maximum rate which is $248.00. The plaintiff has been paid $11,982.65 in compensation benefits for temporary total disability.

Based upon these findings, the Deputy Commissioner concluded that plaintiff was permanently and totally disabled and awarded him benefits pursuant to G.S. 97-29. From this order defendants appealed to the Industrial Commission.

On appeal the Commission adopted as its own Findings of Fact Nos. 1 through 9 of the Deputy Commissioner and made the following additional findings and conclusions:

10. The Plaintiff has a 20% disability to his back, for which he is entitled to compensation.

11. The Plaintiff was temporarily totally disabled from 15 November 1983 until 10 September 1984, the date on which he reached maximum medical improvement. The Plaintiff has been paid $11,982.65 in compensation benefits for his temporary total disability.

12. The Plaintiff's average weekly wage is $382.41, which is sufficient to result in a compensation rate in excess of the maximum rate in effect at the time of his injury, $248.00.

Based upon the foregoing Findings of Fact, the Industrial Commission made the following conclusions of law:

1. As a result of the injury by accident on 15 November 1983, the Plaintiff was temporarily totally disabled from 15 November 1983 until 10 September 1984. The Plaintiff has been compensated correctly for his period of temporary total disability.

2. The Plaintiff is entitled to compensation at the rate of $248.00, beginning 11 September 1984, and continuing for sixty weeks thereafter.

From this opinion and award, plaintiff appealed.

*Turner, Rollins, Rollins & Clark, by Elizabeth O. Rollins and Clyde T. Rollins, for plaintiff, appellant.*

*Tuggle Duggins Meschan & Elrod, P.A., by Richard L. Vanore and Joseph F. Brotherton, for defendants, appellees.*

HEDRICK, Chief Judge.

We must consider this case in light of our Supreme Court's decision in *Whitley v. Columbia Lumber Mfg. Co.*, 318 N.C. 89, 348 S.E. 2d 336 (1986). In *Whitley*, the Court specifically overruled *Perry v. Furniture Co.*, 296 N.C. 88, 249 S.E. 2d 397 (1978). In *Perry*, the Supreme Court had stated:

The language of G.S. 97-31 . . . compels the conclusion that if by reason of a compensable injury an employee is unable to work and earn *any* wages he is totally disabled, G.S. 97-2(9), and entitled to compensation for permanent total disability under G.S. 97-29 *unless all his injuries are included in the schedule set out in G.S. 97-31.* In that event the injured employee is entitled to compensation exclusively under G.S. 97-31 regardless of his ability or inability to earn wages in the same or any other employment.

*Id.* at 93-4, 249 S.E. 2d at 401 (emphasis original). In *Whitley*, the Supreme Court decided that G.S. 97-29 and G.S. 97-31 were alternate sources of compensation for an employee who suffers a disabling injury which is also included as a scheduled injury. The Court stated that "[t]he injured worker is allowed to select the

more favorable remedy, but he cannot recover compensation under both sections. . . ." *Id.* at 96, 348 S.E. 2d at 340.

[1] It is obvious that in the present case, the Commission felt that it was bound to award benefits to the employee under G.S. 97-31(23) and that it could not award benefits under G.S. 97-29. Because it is clear that the Commission acted under a misapprehension of the law, the opinion and award must be vacated and this cause remanded for the Commission to determine whether claimant is entitled to recover benefits for total disability pursuant to G.S. 97-29 or benefits for permanent partial disability under G.S. 97-31.

Upon remand the Commission must determine whether the employee is totally disabled because of the injury to his back as that term is defined in *Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978). If the Commission does find and conclude from the evidence that the claimant is totally disabled because of the injury to his back it must award benefits under G.S. 97-29. If on the other hand the Commission finds and concludes from the evidence that the claimant suffers only a permanent partial disability, it will find the degree of disability and award benefits according to the schedule set out in G.S. 97-31. We point out that there is evidence in the record from which the Commission could find that the claimant is totally disabled or that he is not permanently disabled but that he suffers a degree of permanent partial disability to his back.

[2] We are advertent that Findings of Fact Nos. 8 and 9 made by the Commission by way of adopting the same findings of the Deputy Commissioner might arguably be sufficient to support an ultimate finding or conclusion of total disability. We, however, point out that these findings do not refer to the wage earning capacity of the claimant, an essential element of total disability. Moreover, the further finding and conclusion made by the Commission that the claimant suffered a 20% disability to his back is in conflict with Findings of Fact Nos. 8 and 9. We caution the Commission of the dangers inherent in adopting as its own any findings of the Deputy Commissioner when it, the Full Commission, is about to reverse the decision of the Deputy Commissioner. The better practice would be for the Commission to make all of the findings and conclusions, rather than taking the shortcut of

---

adopting the findings and conclusions of the hearing officer. Indeed the Commission is charged with the responsibility of making the findings and conclusions. To do so would demonstrate that the Commission has carefully evaluated the evidence in the record.

For the reasons stated, the opinion and award dated 20 February 1986 is vacated, and the cause is remanded to the Industrial Commission to make new findings and conclusions and enter the appropriate award. If the Commission deems it necessary it may on its own motion, pursuant to the provisions of G.S. 97-85, receive further evidence from which it may draw its findings and conclusions and enter the proper award.

Vacated and remanded.

Judges MARTIN and COZORT concur.