## J. S. HOILMAN ET ALS. v. WALDRON JOHNSON.

### (Filed 10 December, 1913.).

1. **Deeds and Conveyances—Minerals—Surface of Lands—Adverse Possession—Limitation of Actions.**

   Where the mineral interest in lands and the surface thereof are conveyed to different grantees, each constitutes a different and distinct estate in the lands from the other, and adverse user or possession of the one sufficient to ripen title will not alone apply to the other.

2. **Same—Trials—Evidence—Questions for Jury.**

   The acts of the owner of the surface of the lands in mining for mica and other mineral interests therein which had separately been conveyed are held sufficient in this case upon the question of adverse possession, under conflicting evidence, to be submitted to the jury upon the issue of title thereto.

3. **Deeds and Conveyances—Minerals—Adverse Possession of Part —Limitation of Actions—Trials—Evidence.**

   Where the mineral interests in lands have been separately conveyed, and there is sufficient evidence of adverse possession to ripen title in the occupant and defeat the grantee's paper title, it applies to all of the mineral interests conveyed by the deed, and is not confined to the particular mineral or minerals which had been mined.

APPEAL by plaintiff from *Cline, J.,* at July Term, 1913, of MITCHELL.

Civil action, tried upon this issue:

"Are the plaintiffs the owners and entitled to the possession of the mineral interests in the lands described in the complaint? Answer: No."

The plaintiffs appealed from the judgment rendered.

*A. Hall Johnson, Black & Wilson, Pless & McBee for plaintiffs.*

*W. L. Lambert, Charles E. Green for defendant.*

BROWN, J. This action, as the issue indicates, is brought to recover the mineral interests in a certain tract of land which

formerly belonged to Simeon Slagle. The plaintiff introduced a connected chain of deeds for the mineral interests from Slagle to the plaintiffs, antedating the deed of·the defendant.

The defendant claimed title to the entire fee, including the mineral interests, by deed from Simeon Slagle to the defendant, dated 29 January, 1903.

It is ·admitted that the defendant owns the surface, and to show title to the mineral interests, the defendant relies on his deed as color of title, and undertakes to show seven years possession.

In apt time the plaintiffs asked the court to instruct as follows:

"You are instructed that in all the evidence the defendant has not shown sufficient evidence of adverse possession or user of the mineral interest involved in this suit, and you will answer the issue 'Yes.'"

His Honor refused to give the prayer; plaintiff excepts.

It is well settled that the surface of the earth and the minerals under the surface may be severed by a deed, or reservation in a deed, and when so severed, they constitute two distinct estates. *Outlaw v. Gray,* 163 N. C., 325. The mineral interests being a part of the realty, the estate in them is subject to the ordinary rules of law governing the title to real property.

The presumption that the party having possession of the surface has the possession ·of the subsoil containing the minerals does not exist when these rights are severed. *Armstrong v. Caldwell,* 53 Pa. St., 284.

The owner of the surface can acquire no title to the minerals by exclusive and continuous possession of the surface, nor does the owner of the minerals lose his right or his possession by any length of nonuser. He must be disseized to lose his right, and there can be no disseizin by any act which does not actually take the minerals out of his possession. Cyc., vol. 1, p. 994; *Armstrong v. Caldwell,* 53 Pa. St., 284; *Caldwell v. Corpening,* 37 Pa. St., 427; 87 Amer. Dec., 436; *Wallace v. Elm Grove Coal Co.,* 57 W. Va., 449; *Newman v. Newman,* 7 L. R. A., N. S., 370; *Plant v. Humphries,* 26 L. R. A., N. S., 558.

As *Mr. Justice Strong* says in *Armstrong v. Caldwell, supra,*
"The owner of the surface can acquire title against the owner
of the minerals underneath by no acts or continuous series of
acts that would not give title to a stranger."

Although the evidence as to continuous possession of the min-
eral interests is conflicting, measured by the above rule, we
think his Honor properly refused the plaintiff's requested in-
struction.

The defendant testifies that he took possession in January,
1903, and commenced to mine at once; that he bought the land
and mineral interests, not knowing that the latter had been pre-
viously sold.

Witness continues: "I used the land for farming, mining,
timber, and all other purposes I needed it. I began to prospect
and mine some in two or three months. Mined on it five or six
days the first year, and have mined some on it every year since.
Did this in fall and winter at leisure times. Made some dumps.
Took some mica out of side veins. Worked over the vein for
20 feet, tunneled for 20 or 30 feet. This was on the 3½-acre
tract.

"Then we ran a tunnel on the south side of my house on the
50-acre tract. This was two years after I moved there. Worked
two or three days at that place. Mined and hunted mica all
over the land. When I went there, very little mining had been
done. Looked like a little prospecting after I went there. The
place was torn all to pieces, hunting for mica.

"Leased it for mining to Thomas, and his father, about a year
after I bought it. They worked for about two years; then I
leased to Wilt Davis. He worked along for some five years. I
leased it to Logan Davis last time; was in 1910, when I gave
him a written lease.

"We got a good deal of small mica, and sold it first to Mr.
Willis. Then James Hoilman came there about five years ago
to my house, bought our mica and gave checks for it; made no
claim to it. There are thirty-five openings on the 50-acre tract
made between 1903 and 1912. One opening on the 3½-acre
tract.

"Have paid taxes on the land and mineral. Have not permitted any one to work on the land except under me. Have not, myself, worked for any one else on the land since I bought it. The general custom of mining is to work in fall and winter at leisure times, opening up mines and hunting for better prospects. No regular time for working.

"Before I bought land, I worked under lease from Mr. Slagle. Wilt Davis had the lease, and I went in with him. Paid some royalty. Mr. Edwin C. Guy came to my house about five years ago. Said he was hunting for a piece of land that Mr. Willis had in possession. Then pulled out a paper and asked, me if I knew certain calls. I told him 'No.' He asked to see my deed. I showed it to him. Three or four years later he came back; he said, 'Let's look over that Willis title.'

"He offered me $50, then $100, for my mineral interest in my land. At last I offered to take $1,000. Said if he did not take my offer, I could sell to whoever I pleased, and he would try to sell what he held in that neighborhood.

"Reuben Grindstaff worked 400 yards from my house, and I did not see him. Never saw him or Reuben Hoilman work on my land since I bought it. In 1912 Reuben Grindstaff was at my house to buy mica. We were threshing wheat. Said he did not know if he could show us where he once worked; that he had not been there in fifteen years."

There is much other evidence unnecessary to recite introduced by the defendant tending to show an adverse actual use and occupation of the mineral interests continuously for over seven years from the time the defendant acquired the deed from Slagle prior to the commencement of this action.

Taking all the evidence into consideration, we think his Honor properly submitted the question of adverse possession to the jury. His instructions relating thereto are in line with the decisions of this Court.

The plaintiff further requested the court to charge the jury:

"You are instructed that there is no evidence to be considered by you of any adverse possession to any marble on the land·in-

volved herein, and if you find that the defendant has ripened title to the mica and other minerals, then your answer to the issue would be 'Yes,' but only the mica, etc.".

His Honor refused to give the prayer, as requested. The plaintiff excepts.

This position is untenable. The defendant was not required to mine for every known mineral in order to give notice that he claimed the mineral interests. The mineral interests in land means all the minerals beneath the surface, and when the defendant sunk his shaft or opened his mines, he gave notice of his claim to all such interests included in his deed, and not to one particular mineral only.

We have been cited to no authority by plaintiffs in support of this contention, and deem further discussion of it unnecessary.

We have examined the remaining assignments of error, and find them without merit.

No error.