LILLINGTON STONE COMPANY v. A. J. MAXWELL, COMMISSIONER.

(Filed 14 September, 1932.)

**Taxation B b—Digging gravel is not mining within meaning of statute allowing reimbursement of tax on gasoline used for mining.**

Digging gravel from a pit for commercial purposes is not mining within the meaning of chapter 145, Public Laws of 1931, as amended by chapter 304, and one paying the tax on gasoline used in digging gravel is not entitled to reimbursement of the tax under the provisions of the statute, gravel not being regarded as a mineral under the mining laws.

CLARKSON, J., concurring in result.

APPEAL by defendant from *Devin, J.,* at March Term, 1932, of WAKE.

Civil action for refund of tax on gasoline alleged to have been purchased by plaintiff and used exclusively in mining gravel, heard upon demurrer.

The complaint alleges:

1. That the plaintiff is engaged in the business of operating mining machinery consisting principally of hoists, pumps and excavators used exclusively for mining gravel from veins and pockets deposited below the surface of the earth and extending downward from a few feet to a depth of thirty or forty feet.

2. That plaintiff is entitled to a refund of $1,138.70 taxes paid by it on gasoline used in such operation under the following provisions of chapter 145, Public Laws 1931, as amended by chapter 304, same session:

"Any person, association, firm or corporation who shall buy in quantities of ten gallons or more at any one time any motor fuel, as defined in this act, for the purpose of and the same is actually used in the operation of  .  .  .  (2½) mining machinery consisting principally of air compressors, hoists, pumps, and excavators used exclusively for mining purposes,  .  .  .  on which motor fuels the tax or taxes imposed by this act shall have been paid, shall be reimbursed and repaid the amount of such tax or taxes," upon proper application being made therefor.

3. That plaintiff has complied with the conditions precedent to its right to recover the taxes in question from the defendant, Commissioner of Revenue.

Demurrer interposed upon the ground that the complaint does not state facts sufficient to constitute a cause of action, in that, the operation alleged constitutes no more than the excavation of gravel from a pit which defendant contends is not mining within the meaning of the statute.

From a judgment overruling the demurrer, the defendant appeals.

*Neill McK. Salmon for plaintiff.*
*Attorney-General Brummitt and Assistant Attorneys-General Seawell and Siler for defendant.*

STACY, C. J. Is digging gravel from a pit for commercial purposes mining within the meaning of chapter 145, Public Laws 1931? We think not.

True the term "mining" has accommodated itself to a variety of situations. Annotation 17, A. L. R., 156. Originally it conveyed the idea of extracting minerals from beneath the surface of the earth by means of tunneling and shafting. *Rock House Ford Land Co. v. Raleigh Brick and Tile Co.,* 83 W. Va., 20, 97 S. E., 684, 17 A. L. R., 144. But in later times it has assumed a broader signification, and is not now confined in its meaning to the method of excavation. *Nephi Plaster and Mfg. Co. v. Juab County,* 33 Utah, 114, 93 Pac., 53, 14 L. R. A. (N. S.), 1043; Note, Ann. Cas., 1912A, 1302.

It is limited in its meaning, however, to the extraction of minerals from the earth, and while commercial gravel belongs to the mineral kingdom in that it is inorganic and formed by nature alone, it is not regarded as a mineral under the mining laws. 40 C. J., 738.

STONE CO. *v.* MAXWELL, COMMISSIONER.

Speaking to the subject in *U. S. v. Aitken,* 25 Philippine, 7, the Court said: "It is true that commercial gravel belongs to the mineral kingdom in that it is inorganic and that it is formed by nature alone. But there is an important distinction between it and any of the so-called minerals as recognized by the authorities. Practically speaking, all the definitions of the word 'mineral' agree that such a substance must always have a definite chemical composition by which it can be easily recognized, in whatever part of the earth it may be found. There can be no such uniformity in the chemical content of gravel deposits, for the reason that this depends entirely upon the character of the mineral deposits which have contributed to their formation. And upon the character, quantity, and proximity of the minerals to the gravel deposit, their susceptibility to erosion, the violence with which the erosion is accompanied, the duration of the eroding process, as well as various other facts, depends the size of the pebbles and the quality of the deposit as commercial gravel. There is nothing constant in the character of commercial gravel by which to indentify. it as a mineral, except that it consists of broken fragments of rock mingled with finer material, such as sand and clay. Nothing definite can be said of its chemical composition as can be said of the minerals. Commercial gravel is simply a jumbled mass of fragments of various minerals (rocks). Science, at least, cannot accept as a distinct subdivision of the mineral kingdom any substance whose character and attributes are so composite and fluctuating. It is true that beds of sandstone and limestone may possibly owe their origin in some instances to deposits of ordinary gravel. (Barringer and Adams on The Law of Mines and Mining in the United States; Enc. Brit. 11th ed., Title 'Gravel.') But commercial gravel has not yet reached that stage. So far as scientific classification goes, then, commercial gravel cannot be considered as a mineral." In this view of the case, the demurrer should have been sustained.

Reversed.

CLARKSON, J., concurring in the result: The caption of the act, chapter 145, Public Laws 1931, is as follows: "An act to amend chapter two, Public Laws of one thousand nine hundred and twenty-one, and acts amendatory thereof and additional thereto, relating to the State highway system and public roads of the State, and to provide for the maintenance thereof."

Section 24, subsection 15, of said act, is as follows: "Any person, association, firm or corporation who shall buy in quantity of ten gallons or more at any one time any motor fuels as defined in this act for the purpose of, and the same is actually used in the operation of (1) farm

tractor used principally for agricultural purposes, (2) motor boat used principally for fishing purposes (see amendment below), and/or (3) manufacturing processes in which such motor fuel is used as an ingredient, solvent or vehicle in the process, on which motor fuels the tax or taxes imposed by this act shall have been paid, shall be reimbursed and repaid the amount of such tax or taxes paid under this act upon the following conditions and in the following manner," etc.

Said act was amended, chapter 304, part section 1, by inserting between the words "fishing purposes" and the word "and" in line 6 of above subsection, the following: "Mining machinery, consisting principally of air compressors, hoists, pumps, and excavators used exclusively for mining purposes."

It is a matter of common knowledge that this amendment was passed to cover the type of mining done in the western part of the State, and to take care of the mining of feldspar, mica, etc. I do not think it was the intention of the General Assembly to cover digging gravel, which this controversy is about.