BUILDERS SUPPLIES COMPANY OF GOLDSBORO, NORTH CAROLINA, INC. v. NORWOOD A. GAINEY

No. 728SC150

(Filed 28 June 1972)

1. Mines and Minerals § 1— commercial gravel

Commercial gravel is not regarded as a mineral under the mining laws of North Carolina.

2. Mines and Minerals § 1— sand and gravel

Generally sand and gravel are considered part of the soil and not minerals which possess exceptional qualities or value.

3. Deeds § 14; Mines and Minerals § 1— profit a prendre — appurtenant — in gross

*Profits a prendre* may be held "appurtenant" to other land or may exist "in gross."

4. Deeds § 14; Mines and Minerals § 1— profit a prendre — in gross — appurtenant

If a *profit a prendre* is "in gross," it may be used for the benefit of the individual owner and does not have to be used solely for the

benefit of the dominant estate as would be the case were it "appurtenant."

**5. Deeds § 14; Mines and Minerals § 1— reservation of right to remove sand and gravel — profit a prendre in gross**

Grantor's reservation in a deed conveying 331 acres of the right to go on the land and remove sand and gravel from 35 acres to be laid out by the grantor constituted a *profit a prendre* in gross.

**6. Deeds § 14; Mines and Minerals § 1— reservation of right to remove sand and gravel — nature of right**

The reservation of the right to go on land and remove sand and gravel from 35 acres to be selected by the grantor did not convey an interest in or right to the sand and gravel in place, which under mining law would create a severable and independent legal estate in the land; under such *profit a prendre*, the substances must be severed from the ground before title to the substances passes.

**7. Deeds § 14; Equity § 2; Mines and Minerals § 1— reservation of right to remove sand and gravel — profit a prendre — laches**

Where a deed reserved to the grantor the right to go on 331 acres conveyed by the deed and remove sand and gravel from 35 acres to be laid out by the grantor, the lapse of 15 years between execution of the reservation and the time the grantor's successor tried to exercise the privilege, when coupled with evidence that the grantee made numerous improvements to the 35-acre tract laid off by the grantor in the mistaken belief that the grantor and its successor had abandoned all claims to the *profit a prendre*, that the grantee paid taxes on all 331 acres while the grantor's successor has never listed the 35-acre parcel for tax purposes, and that the grantee has removed topsoil from five acres of the 35-acre tract in order to make removal of the sand possible, *held* sufficient to prevent the grantor's successor from removing sand and gravel from the grantee's land.

APPEAL by plaintiff from *Bone, Emergency Judge*, 27 September 1971 Session of Superior Court of WAYNE County.

Plaintiff originally brought this action on 30 November 1967. At trial the court granted defendant's motion for directed verdict at the close of plaintiff's evidence. On appeal new trial was granted. *Builders Supplies Co. v. Gainey*, 10 N.C. App. 364, 178 S.E. 2d 794, (1971), cert. denied 278 N.C. 300, 180 S.E. 2d 178 (1971).

Plaintiff brought this action to obtain an adjudication as to ownership of a 35-acre tract of land, to restrain defendants from interfering or attempting themselves to remove any sand and gravel therefrom, and for damages. Defendant denied generally the allegations of the complaint and pleaded as one of its defenses the doctrine of laches.

On 18 April 1952, Bryan Rock and Sand Company, Inc., conveyed a 331-acre tract of land to defendant but reserved "the right to lay out and stake off 35 acres of the above described land wherever it desires and to take therefrom all sand, gravel and sand and gravel it so desires with the right of ingress, egress and regress over any part of said land for the purpose of removing said sand or gravel." After the death of James E. Bryan, the President of Bryan Rock and Sand Company, Inc., the corporation was dissolved and its real property conveyed to a successor business association in the form of a limited partnership which in turn re-conveyed the land to a newly organized corporation, Bryan Rock and Sand Company. On 31 July 1959, Bryan Rock and Sand Company conveyed to American-Marietta Company seven tracts of land including all right, title and interest reserved to Bryan Rock and Sand Company in all deposits of sand and gravel and specifically referred to the 1952 deed which conveyed 331 acres to defendant subject to the above-quoted reservation of sand and gravel. On 11 May 1964, Martin-Marietta Corporation assigned to plaintiff, Builders Supplies Company, all of its interest in sand and gravel in 35 acres which had been created by reservation in the earlier 1952 deed of 331 acres to defendant.

The plaintiff's evidence tends to show that Bryan Rock and Sand Company sent its representatives on the land in 1958 or 1959 to make a survey and stake off the 35-acre tract. Thereafter an employee of Bryan Rock and Sand Company and its successors went on to the land about every six months to make inspections. No sand, "except possibly three or four truck loads" was removed from the inside of the perimeter of the 35-acre tract before 1965 when it was re-surveyed. In 1967 when plaintiff's representative last went on the 35-acre tract to take samples, he was ordered off the premises by defendant. Plaintiff's representative testified that no additional sand was dug and removed from the 35-acre tract between 1965 and 1967. The evidence does tend to show, however, that defendants removed large quantities of sand from the area surrounding the 35-acre tract by pumping up to the boundaries originally staked off by Bryan Rock and Sand Company.

The defendant's evidence tends to show that the 35-acre tract in dispute was staked off in 1953 shortly after the death of the President of Bryan Rock and Sand Company, Inc., Mr.

James E. Bryan. Defendant cleared the 35-acre tract of all trees and bushes and built the only road from the highway to it, a distance of at least one-half mile. He planted beans and corn on the tract in years past, as well as using it as pasturage. Defendant had livestock on the disputed tract every year since he acquired the 331-acre tract and had fenced all but one acre of the 35-acre parcel. Defendant once removed from five to eight feet of topsoil from the disputed parcel, and only the defendant has ever removed any dirt, sand or gravel from the 35-acre tract of land.

The jury returned a verdict finding that plaintiff was barred by laches from asserting any claim to the sand and gravel in the 35-acre tract and that plaintiff was not entitled to remove said sand and gravel, and the trial court entered judgment accordingly.

From the dismissal of the action, plaintiff gave notice of appeal.

*Smith and Everett, by James N. Smith, for plaintiff appellant.*

*Taylor, Allen, Warren and Kerr, by John H. Kerr III, for defendant appellee.*

MORRIS, Judge.

[1, 2]    When this case was first presented for review on appeal, we simply labeled the interest involved as an "easement" for purposes of that decision. However, determination of this appeal requires, we think, a re-examination of the interest reserved in the 1952 deed. While commercial gravel belongs to the mineral kingdom in that it is inorganic and formed by nature alone, it is not regarded as a mineral under the mining laws of North Carolina. *Lillington Stone Co. v. Maxwell*, 203 N.C. 151, 165 S.E. 351 (1932). (But see G.S. 74-49 (6), effective 11 June 1971.) Generally sand and gravel are considered part of the soil and not minerals which possess exceptional qualities or value. 54 Am. Jur. 2d, Mines and Minerals, § 8, p. 193. Thus when discussing the interest in sand and gravel reserved herein, we cannot—as appellant contends we must—apply as authority the case law dealing with mineral rights, which recognizes severance of the legal estate in the minerals from that of the legal estate in the surface, and establishes that one cannot

abandon such rights by mere nonuse. *Hoilman v. Johnson,* 164 N.C. 268, 80 S.E. 249 (1913) ; see 5 Strong, N. C. Index 2d, Mines and Minerals, § 1, p. 519.

[3, 4]　"A right that is closely akin to the easement is the *profit a prendre,* which is a right created in its owner to take a part of the soil or the products of the soil from the land of another person." Webster, Real Estate Law in North Carolina, § 309, p. 372. Black's Law Dictionary, 4th Ed., defines *profits a prendre* as:

> "  . . . A right exercised by one man in the soil of another, accompanied with participation in the profits of the soil thereof. A right to take part of the soil or produce of the land. . . . The term includes the right to take soil, gravel, minerals, and the like from another's land . . . *Profits a prendre* differ from easements, in that the former are rights of profit, and the latter are mere rights of convenience without profit. . . . " (Citations omitted.)

See also 28 C.J.S., Easements, § 3(f), p. 631; 25 Am. Jur. 2d, Easements and Licenses, § 4, p. 419; 54 Am. Jur. 2d, Mines and Minerals, § 120, p. 303; 1 Thompson on Real Property, §§ 135-140, pp. 508-529 (1964). *"Profits a prendre* are closely analogous to easements in most respects and the principles applicable to one are generally applicable for the other." Webster, *supra,* at p. 374. For example, under the provision of the Restatement of the Law of Property, § 399, p. 2343, the term "easement" includes "profits"; and as is the case with easements, *profits a prendre* may be held "appurtenant" to other land or may exist "in gross" meaning they may be held independently of any ownership in other land and that it does not pass with the transfer of any land. If a *profit a prendre* is "in gross," it may be used for the benefit of the individual owner and does not have to be used solely for the benefit of the dominant estate as would be the case were it "appurtenant." 1 Thompson on Real Property, § 136, pp. 516-517.

[5]　The leading authority in North Carolina dealing with *profits a prendre* is *Council v. Sanderlin,* 183 N.C. 253, 111 S.E. 365, 32 A.L.R. 1527 (1922), wherein the owner conveyed land but reserved for himself, his heirs and assigns the right to hunt on the uncleared and uncultivated portions and to protect the game thereon against trespass of persons except the

grantee, his executors, administrators, and assigns. There our Supreme Court said:

> *"Profit a prendre* is created by grant; it cannot be created by parol. If enjoyed by reason of holding certain other estate it is regarded in the light of an easement appurtenant to an estate; whereas, if it belongs to an individual (as in this case), distinct from any ownership of other lands, it takes the character of an estate in the land itself, rather than that of an easement therein." 183 N.C., at p. 275.

We conclude that in the case at bar the personal right to go on the land to remove sand and gravel was not exclusively for the enjoyment of a dominant estate; was distinct from any ownership of other lands; and was, therefore, a *profit a prendre* in gross.

[6]    The present reservation was merely the right to go on the land and remove sand and gravel as opposed to the right to sell sand and gravel in place, the critical distinction being that the substances must be severed from the ground before title to the substance passes. See 1 Thompson on Real Property, § 136, p. 519. The reservation here does not convey an interest in or right to the sand and gravel in place which under mining law would create a severable and independent legal estate in the land. *Vance v. Pritchard,* 213 N.C. 552, 197 S.E. 182 (1938). Instead, the *profit a prendre* merely reserves the privilege of entering ["right of ingress, egress and regress over any part of said land"] to remove the sand and gravel, and no right exists in the material until it is severed.

[7]    Appellant assigns as error the submission to the jury of appellee's equitable affirmative defense of laches. We think the issue was properly submitted. The facts in the case sub judice are similar to the facts in *Matthews Slate Co. v. Advance Industrial S. Co.,* 185 App. Div. 74, 172 N.Y. Supp. 830 (1918). There a *profit a prendre* was reserved by the grantor in the accumulating waste slate of a quarry which was conveyed to the grantee. No one removed the waste slate for 33 years and there was little use for it until a new process of roof-surfacing was discovered. The Court held the evidence of nonuse accompanied by other circumstances showing an intention to abandon was sufficient to prevent the grantor from exercising the rights

reserved in the conveyance. See also *Council v. Sanderlin, supra;* "Servitudes-Appurtenant or In Gross," 29 Yale Law Journal 218 (1919) ; compare *Gerhard v. Stephens,* 68 Cal. 2d 864, 442 P. 2d 692, 69 Cal. Rptr. 612 (1968).

Here appellee raised the defense of laches in his pleadings, and there is sufficient evidence to support such a charge in defense of appellant's claim for injunctive relief and damages. 7 Strong, N. C. Index 2d, Trial, § 40, pp. 351-352. Nor do we find error in the court's charge concerning this issue.

" . . . The doctrine of laches may be defined generally as a rule of equity by which equitable relief is denied to one who has been guilty of unconscionable delay, as shown by surrounding facts and circumstances, in seeking that relief. 'Laches' has been defined as such neglect or omission to assert a right, taken in conjunction with lapse of time and other circumstances causing prejudice to an adverse party, as will operate as a bar in equity.

. . . The idea of laches is embodied also in the words 'acquiescence,' 'election,' 'estoppel,' 'abandonment,' and 'ratification.' " 27 Am. Jur. 2d, Equity, § 152, pp. 687-688; see also 3 Strong, N. C. Index 2d, Equity, § 2, p. 551; *Howell v. Alexander,* 3 N. C. App. 371, 165 S.E. 2d 256 (1969).

We do not find any merit in the appellant's contention that appellee has not been prejudiced when the evidence clearly tends to show that appellee made numerous improvements to the 35-acre tract in the mistaken belief that appellant and its predecessors had abandoned all claim to the *profit a prendre;* that appellee paid taxes on all 331 acres while appellant has never listed the 35-acre parcel for tax purposes; and that appellee has dug from five to eight feet of topsoil from five acres of the 35-acre tract in order to make removal of the sand possible.

The lapse of approximately 15 years between the time of the execution of the reservation by deed and the time appellant tried to exercise that privilege was sufficient, when coupled with the other facts of this case, to prevent appellant from removing any sand and gravel from appellee's land.

Although we do not discuss the remaining assignments of error, we have considered them and find them to be without merit.

Affirmed.

Judges VAUGHN and GRAHAM concur.