BUILDERS SUPPLIES COMPANY OF GOLDSBORO, NORTH CAROLINA, INC. v. NORWOOD A. GAINEY

No. 42

(Filed 15 November 1972)

1. **Appeal and Error § 21— denial of certiorari — not approval of reasoning of Court of Appeals**

Supreme Court's denial of a writ of certiorari to the Court of Appeals does not constitute approval of the reasoning upon which the Court of Appeals reached its decision.

2. **Easements § 1— easement defined**

An easement is a right to make some use of land owned by another without taking a part thereof.

3. **Deeds § 14; Easements § 2— profit a prendre defined**

A *profit a prendre* is the right to enter upon the land of another and take therefrom some part or product thereof, game and fish being considered a part or product of the land for this purpose.

4. **Easements § 2— grant of profit a prendre — granting same right to others**

The grant of a *profit a prendre* customarily does not preclude the grantor from exercising a like right upon the land or granting such right to others also.

5. **Easements § 2; Deeds § 12— profit a prendre — conveyance of present estate**

The grant of a *profit a prendre* is to be distinguished from a conveyance of a present estate in such material in its natural state upon the land, such as a timber deed or a deed to unmined minerals.

6. **Easements § 2; Deeds § 12— profit a prendre or present estate — intent of the parties**

The intent of the parties, when read in the light of surrounding circumstances known to the parties, determines whether a conveyance is a grant of a *profit a prendre* or a grant of a present estate in the designated portion of the grantor's land, assuming the sufficiency of the deed otherwise.

7. **Deeds §§ 12, 14; Mines and Minerals § 1— timber, minerals, sand and gravel — present conveyance or reservation**

The owner of land may make a present conveyance or reservation of standing timber, unmined minerals and other identifiable substances constituting parts of the land, including sand and gravel.

8. **Easements § 2; Deeds § 14— reservation of right to remove sand and gravel — fee simple estate**

In reserving in a deed conveying 331 acres "the right to lay out and stake off 35 acres of the above described land wherever it desires and to take therefrom all sand, gravel and sand and gravel it so de-

sires," the grantor did not intend to reserve a *profit a prendre* but intended to reserve a fee simple estate in the sand and gravel upon a tract of 35 acres to be selected by the grantor within the larger tract conveyed.

9. **Deeds § 1— undescribed tract within described larger tract — time of passage of title**

A deed purporting to convey an undescribed smaller tract contained within a described larger tract, with the grantee being authorized to locate such smaller tract, does not pass title until the selection is made, the grantee having prior to that time, at the most, a contractual right to acquire title.

10. **Equity § 2; Mines and Minerals § 1— unmined minerals — contractual right — laches**

While the owner of a vested estate in unmined minerals or like substances does not lose such rights by a mere nonuser, one who has only a contractual right to acquire such an estate may be barred by laches from enforcing it.

11. **Equity § 2— laches defined**

Laches is the negligent omission for an unreasonable time to assert a right enforceable in equity.

12. **Deeds § 14; Equity § 2; Mines and Minerals § 1— reservation of right to remove sand and gravel — laches**

The trial court properly submitted to the jury an issue as to whether plaintiff was barred by laches to assert any claim under a reservation in a deed of the right to remove sand and gravel from 35 acres to be selected by the grantor from the 331 acres conveyed, where there was evidence tending to show that when defendant grantee requested the grantor to proceed to lay off the 35-acre tract, the grantor abandoned its claim to the sand and gravel by telling defendant that it did not want any of it and that the entire property was defendant's, that six more years passed before employees of plaintiff, a successor to the grantor, staked out the 35 acres, that another six years passed before plaintiff took any steps preparatory to the removal of sand and gravel from the property, and that defendant in the meantime cleared the land and removed therefrom much of the overburden, which work was necessary in order to have access to the sand and gravel thereunder.

ON *certiorari* to the Court of Appeals to review its judgment, reported in 14 N.C. App. 678, 189 S.E. 2d 657. This is an action to remove an alleged cloud upon the title of the plaintiff to sand and gravel upon a described tract of land in Wayne County. The plaintiff and the defendant claim through a common source, Bryan Rock & Sand Company, Inc., hereinafter called Bryan. In 1952, Bryan conveyed to the defendant and wife, she being now deceased, two tracts of land containing

223.5 acres and 107.5 acres, respectively, the deed containing the following provision:

"The party of the first part expressly reserves the right to lay out and stake off 35 acres of the above described land wherever it desires and to take therefrom all sand, gravel and sand and gravel it so desires with the right of ingress, egress and regress over any part of said land for the purpose of removing said sand or gravel."

The plaintiff alleges that by mesne conveyances Bryan's right under the foregoing reservation passed to the plaintiff; that one of the plaintiff's predecessors in title caused a tract of 33.9 acres, within the two tracts so conveyed by Bryan to the defendant and wife, to be surveyed and staked off; and that the defendant refuses to permit the plaintiff to enter thereon and remove sand and gravel therefrom. The defendant's answer denies that the plaintiff is the owner of the sand and gravel; alleges that the defendant is the owner of the described land free and clear of all claims of the plaintiff; and by way of further answers, pleads the seven year statute of limitation, laches, estoppel and the nonassignability of whatever right Bryan reserved in its deed to the defendant and his wife.

The jury found the plaintiff is barred by laches to assert any claim to the sand and gravel located on the 33.9 acre tract and is not the owner of or entitled to remove said sand and gravel. The superior court thereupon entered judgment dismissing the plaintiff's action with prejudice and adjudging that the defendant is the owner of the land, free and clear from the reservation. The Court of Appeals affirmed.

The plaintiff offered in evidence the deed conveying the two larger tracts to Bryan in fee simple; the deed dated 18 April 1952 from Bryan to defendant and his wife, conveying these tracts to them in fee simple, as tenants by the entireties and containing the above quoted reservation; and the other mesne conveyances in the plaintiff's alleged chain of title to the right so reserved by Bryan. It was stipulated that the two tracts described in the deed from Bryan to the defendant and wife adjoined and that the 33.9 acre tract here in question is included within those two tracts.

The plaintiff also offered testimony to the following effect:

In 1958 or 1959, employees of a successor to Bryan, predecessor in title to the plaintiff, entered upon the land so conveyed by Bryan to the defendant and wife and surveyed and staked out a tract of approximately 35 acres contained therein. Thereafter, one of these employees, with the knowledge of the defendant and with no objection by him, from time to time inspected the 35 acre tract.

In 1964, the plaintiff acquired its interest in the sand and gravel upon this tract. In 1965, its employees went upon the land and, with the defendant's help, located some of the stakes placed in the course of the above mentioned survey, and made a second survey. The defendant made no objection to this second survey. In the meanwhile, the defendant had taken sand and gravel from the larger tracts "up to the line" of the tract so surveyed and staked off. Approximately each six months thereafter until 1967, an employee of the plaintiff inspected the tract. On these inspections he observed that trees had been cut, crops were growing on the tract so staked off and dirt had been removed therefrom. In 1967, the plaintiff's representative went upon the tract so surveyed and staked off, for the purpose of making test drillings. The defendant objected and the plaintiff's employee desisted. The plaintiff has never listed for taxation the rights it now claims in the sand and gravel.

The defendant's evidence was to the following effect:

The defendant has been in the sand and gravel business for eleven or twelve years. Prior to that time he was engaged in farming. In 1952, he purchased the two larger tracts, which include the land here in question, from Bryan. Soon thereafter, he requested Bryan's president and principal stockholder to "get this thing staked off." Bryan's president then expressed doubt that there was any sand and gravel on the property which Bryan could use in view of the extensive overburden on it. Before anything was done toward locating the 35 acre tract, Bryan's then president died. His successor, Mr. Bailey, a witness for the defendant, was then requested by the defendant to proceed with the location of the 35 acres, pursuant to the reservation in the deed. Mr. Bailey thereupon said to the defendant: "Norwood, I don't want any of it. There is not any of it any good to use whatsoever. It is yours." This conversation

occurred in 1952. Thereafter, the defendant cleared the land and built a road into it, the road running into the smaller tract here in question. In 1953 and thereafter, the defendant planted bean and corn crops on the 33.9 acre tract and then put it into grass for grazing purposes. He has grazed livestock on it each year since that time. He goes on the property daily. Since his conversation in 1952 or 1953 with Mr. Bailey, he has cleared and removed dirt from the tract in question and no one else has done so. Bryan was dissolved in 1953. In the process of dissolution it conveyed to a predecessor of the plaintiff all of its properties, including its rights under the foregoing reservation.

Mr. Bailey, former president of Bryan, testified for the defendant to the following effect: He became president of Bryan in 1953 and is familiar with the land here in question. After Bryan delivered the deed to the defendant in 1952, Bryan was to stake off some 35 acres of the property and decide whether it wanted this small tract. Following his becoming president of Bryan, Mr. Bailey caused an examination of the property to be made and thereupon advised the defendant that Bryan had checked the property thoroughly and had no more interest in it and, as far as Mr. Bailey was concerned, the property was the defendant's. Mr. Bailey was General Manager of Bryan's successor in interest until 1959. He did not direct its employees to go upon the land to stake out the smaller tract and has no knowledge of any such instructions.

At the conclusion of all the evidence, the plaintiff moved for a directed verdict in its favor. This motion was denied.

*Smith and Everett, by James N. Smith, for plaintiff.*

*Taylor, Allen, Warren & Kerr, by John H. Kerr III for defendant.*

LAKE, Justice.

[1] The first trial of this action in the superior court resulted in a judgment for the defendant upon a directed verdict. On appeal from that judgment, the Court of Appeals held the evidence presented at that trial was sufficient to withstand a motion for a directed verdict and granted a new trial. *Builders Supplies Co. v. Gainey,* 10 N.C. App. 364, 178 S.E. 2d 794. The Court of Appeals was then of the opinion that the reservation in the deed from Bryan to the defendant gave Bryan an ease-

ment, the exact location of which within the larger tract conveyed to the defendant could be fixed by Bryan within the rule of *Gas Co. v. Day*, 249 N.C. 482, 106 S.E. 2d 678, and *Borders v. Yarbrough*, 237 N.C. 540, 75 S.E. 2d 541. This Court denied certiorari. *Builders Supplies Co. v. Gainey*, 278 N.C. 300, 180 S.E. 2d 178. Such denial does not constitute approval of the reasoning upon which the Court of Appeals reached its decision. See: Concurring opinion by Mr. Justice Frankfurter in *Brown v. Allen*, 344 U.S. 443, 491, 73 S.Ct. 397, 439, 97 L.Ed. 469, 507; *State v. Case*, 268 N.C. 330, 150 S.E. 2d 509.

Upon the second trial in the superior court, the jury rendered a verdict in favor of the defendant, finding both (1) that the plaintiff is barred by laches from asserting any claim to the sand and gravel in question, and (2) that the plaintiff is not the owner of or entitled to remove such sand and gravel. The superior court thereupon entered judgment for the defendant and, upon appeal to it, the Court of Appeals found no error. *Builders Supplies Co. v. Gainey*, 14 N.C. App. 678, 189 S.E. 2d 657. Upon such second appeal, the Court of Appeals was of the opinion that the reservation in Bryan's deed to the defendant and his wife gave Bryan not an easement nor an interest in the sand and gravel in place upon the tract in question but a profit a prendre.

[2] We agree with the latter conclusion of the Court of Appeals that the right, if any, reserved by Bryan in its deed to the defendant and his wife was not an easement. An easement is a right to make some use of land owned by another without taking a part thereof. *Richfield Oil Co. v. Hercules Gasoline Co.*, 112 Cal. App. 431, 297 P. 73; Webster, Real Estate Law in North Carolina, §§ 270, 309; 25 AM. JUR. 2d, Easements, §§ 2, 4; 28 C.J.S., Easements, § 3; Black's Law Dictionary.

[3, 4] A profit a prendre, though similar to and sometimes called an easement, see Powell on Real Property, § 405, differs therefrom in that it is the right to enter upon the land of another and to take therefrom some part or product thereof, game and fish being considered a part or product of the land for this purpose. *Council v. Sanderlin*, 183 N.C. 253, 111 S.E. 365; Webster, Real Estate Law in North Carolina, § 309; 25 AM. JUR. 2d, Easements, § 4; 28 C.J.S., Easements, § 3f; Black's Law Dictionary. Profits a prendre are frequently called "rights of common." Webster, Real Estate Law in North Carolina, § 309;

25 AM. JUR. 2d, Easements, § 4. See also Powell on Real Property, § 417. Customarily, at least, the grant of a profit a prendre does not preclude the grantor from exercising a like right upon the land or granting such right to others also.

[5] The grant of a profit a prendre is to be distinguished from a conveyance of a present estate in such material in its natural state upon the land, such as a timber deed or a deed to unmined minerals. For example, the grant of a right to enter upon the grantor's land and cut and remove firewood therefrom for the grantee's own use would be a grant of a profit a prendre and would convey no present title to standing trees, whereas a deed to all the trees of a specified type and size upon a described tract of land would convey to the grantee the present title to such standing timber.

[6, 7] The intent of the parties, as disclosed by the conveyance, when read in the light of surrounding circumstances known to the parties, determines whether the conveyance is a grant of a profit a prendre or a grant of a present estate in the designated portion of the grantor's land, assuming the sufficiency of the deed otherwise. Annot., 66 A.L.R. 2d 978, 984. Unquestionably, the owner of land may, by a conveyance otherwise valid, convey a present estate in unmined minerals, retaining in himself the title to the other parts of his land, or may convey a present estate in such other parts of the land and retain in himself the title to the unmined minerals therein. *Vance v. Guy,* 223 N.C. 409, 27 S.E. 2d 117; *Hoilman v. Johnson,* 164 N.C. 268, 80 S.E. 249; *Outlaw v. Gray,* 163 N.C. 325, 79 S.E. 676. Similarly, he may make a present conveyance, or reservation, of standing timber. *Westmoreland v. Lowe,* 225 N.C. 553, 35 S.E. 2d 613. As is said in 54 AM. JUR. 2d, Mines and Minerals, § 103, the owner of land "can divide his estate horizontally as well as vertically, so that title to the surface vests in one person and title to the minerals in another." As illustrated by conveyances of growing timber, this is not due to any peculiar quality in mineral substances. We perceive no basis for distinguishing in this respect between minerals and growing timber on the one hand and other identifiable substances constituting parts of the land of the grantor.

Sand and gravel are no less capable of identification and separation from other portions of the land than are many mineral ores in their natural state in the earth. As the Court of

Appeals noted in its opinion, commercial gravel was said not to be a "mineral" in *Lillington Stone Co. v. Maxwell,* 203 N.C. 151, 165 S.E. 351, the question for decision being the right of the plaintiff to a refund of taxes paid on gasoline used in excavating gravel under a statute permitting such refund if the gasoline was used in the operation of "mining machinery." In 54 AM. JUR. 2d, Mines and Minerals, § 8, it is said, "Generally, on the ground that they do not possess exceptional qualities or value, but are only part of the soil itself, sand, gravel and clay are not considered minerals, although there is some contrary authority." The circumstance that these substances are not included within the term "minerals," as used in statutes regulating commercial mining or relating to taxation, does not preclude these substances from being the subject of a conveyance while embedded in the earth. Sand and gravel are included in the definition of "minerals" in the Mining Act of 1971. G.S. 74-49(6).

In *Outlaw v. Gray, supra,* the owner of land conveyed to the grantee, his heirs and assigns, "the right of entering in and upon the lands hereinafter described, for the purpose of searching for all marl deposits and fossil substance, and for taking and removing therefrom said marl and fossil substance which he may find embedded in the earth of the said lands, and for mining and quarrying operations for that purpose to any extent he may deem advisable, but not to hold possession of any part of the said lands for any other purpose whatsoever." This Court said: "It must be admitted that the deed is sufficient in form to convey a fee in the land itself, had that been the subject of conveyance. That being so, it is sufficient to convey a fee in the mineral deposits described in it."

[8] We are unable to distinguish *Outlaw v. Gray, supra,* from the case before us except that in that case the land, upon which the rights in question were to be exercised, was specifically described. Consequently, we conclude that the deed from Bryan to the defendant and wife was not intended to reserve a profit a prendre to Bryan but was intended to reserve in Bryan the fee simple estate in the sand and gravel upon a tract of 35 acres to be selected by Bryan within the larger tract conveyed. Had the reservation related to the entire tract conveyed to the defendant and wife, we think it unquestionable that the reservation would have been sufficient to retain in Bryan a transferable fee simple estate in the sand and gravel upon the land.

We turn, therefore, to the sufficiency of the description in the reservation of the land to which it relates. In *Cathey v. Lumber Company,* 151 N.C. 592, 66 S.E. 580, this Court, speaking through Justice Brown, said:

"It is self-evident that a certain part of a whole cannot be set apart unless the part can be in some way identified. Therefore, where a grantor undertakes to convey a part of a tract of land, his conveyance must itself furnish the means by which the part can be located; otherwise his deed is void, for it is elementary that every deed of conveyance must set forth a subject-matter, either certain within itself or capable of being made certain by recurrence to something extrinsic to which the deed refers."

In *Katz v. Daughtrey,* 198 N.C. 393, 151 S.E. 879, Chief Justice Stacy, speaking for the Court, said:

"That the deed is void for vagueness and uncertainty of description would seem to admit of no doubt. It fails to describe with certainty the property sought to be conveyed, and it contains no reference to anything extrinsic, which by recourse thereto is capable of making the description certain under the principle of *id certum est quod certum reddi potest.* [Citations omitted.]

"The defendant's deed presumably attempts to convey twenty-five acres of a fifty-acre tract (though this may be doubted) without fixing the beginning point or any of the boundaries of the twenty-five acres. This is too vague and indefinite to admit of parol evidence to fit the description to the thing intended to be conveyed."

In *McDaris v. "T" Corporation,* 265 N.C. 298, 144 S.E. 2d 59, Justice Clifton Moore, speaking for the Court, said: " 'Parol evidence is admissible to fit the description to the land. G.S. 8-39. "Such evidence cannot, however, be used to enlarge the scope of the descriptive words." ' *Baldwin v. Hinton,* 243 N.C. 113, 90 S.E. 2d 316. The purpose of parol evidence is to fit the description to the property, not to create a description."

In *Gas Co. v. Day, supra,* and in *Borders v. Yarbrough, supra,* this Court sustained claims of easements on the basis of the well settled rule that where a grant of an easement of way does not locate the way upon the grantor's land, which land

is described sufficiently, a subsequent, actual location of the way upon the described tract by the grantee, acquiesced in by the owner of the servient estate, locates the way sufficiently to enable the courts to protect the right of the grantee therein.

Our research has disclosed no decision by this Court applying to grants of possessory interests in land the above mentioned rule applicable to the location of easements of way. In American Law of Property, § 8.21, it is said:

> "A possessory interest, as contrasted with an incorporeal interest, involves the exclusive possession of a certain space. Hence its creation requires the designation of the space to be occupied. An easement authorizes the limited use of land within space occupied by another. Its nature does not require the precise description of that space which the creation of a possessory interest does."

In Thompson on Real Property, § 3053, it is said:

> "A deed to a specified number of acres out of a larger tract with the right in the grantee to select the location of his acreage will be valid provided the grantee makes a selection. No title passes until the selection is made. The deed itself only gives the right to make the selection, and to enforce a conveyance of the land that may be chosen in the manner provided by the deed. Until a selection is made, the grantee's continuing right thereof will pass to subsequent grantees. A right given the vendee to select a definite number of acres of land out of a larger tract affords the means of rendering the description certain."

In *Harris v. Woodard*, 130 N.C. 580, 41 S.E. 790, Justice Clark, later Chief Justice, said:

> "Here there is no subject-matter which is either definite in itself or capable of being reduced to a certainty by recurrence to something to which the deed refers. No beginning point, nor directions, nor distances are given, *and there is nothing which authorizes any one to lay off the lines of any particular three acres* out of the forty in the tract, which tract is bounded by the parties named." (Emphasis added.)

[9] It is not necessary in the present case for us to decide whether the above mentioned rule with reference to the sub-

sequent location of an easement of way applies also to a deed which purports to convey an undescribed smaller tract contained within a described larger tract, the grantee being authorized to locate such smaller tract. In any event, as shown by the foregoing quotation from Thompson on Real Property, no title passes under such a deed until the selection is made. Prior to that time the grantee would have, at the most, a contractual right to acquire title.

[12] "[A]n executory written contract to sell or convey real property may be abandoned or canceled by mutual agreement orally expressed." *Scott v. Jordan*, 235 N.C. 244, 69 S.E. 2d 557. The undisputed evidence is that when the defendant requested Bryan to proceed to lay off the 35 acre tract to which its reservation related, Bryan, through its president, informed the defendant that it did not want any of it and, so far as Bryan was concerned, the entire property was the defendant's. At least six more years passed before employees of a successor to Bryan went upon the property and staked out a tract of approximately 35 acres. At least another six years passed before the plaintiff took any steps preparatory to the removal of sand and gravel from the property.

[10, 11] While the owner of a vested estate in unmined minerals, or like substances, does not lose such rights by a mere nonuser, *Hoilman v. Johnson, supra,* one who has only a contractual right to acquire such an estate may be barred by laches from enforcing it. Laches is the negligent omission for an unreasonable time to assert a right enforceable in equity. *Stell v. Trust Co.*, 223 N.C. 550, 27 S.E. 2d 524. "In equity, where lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim, the doctrine of laches will be applied. Hence, what delay will constitute laches depends upon the facts and circumstances of each case." *Teachey v. Gurley*, 214 N.C. 288, 199 S.E. 83.

In 58 C.J.S., Mines and Minerals, § 162, it is said:

"Where the grantor reserves not the title but a mere equitable right to enter on the land and drill an oil well, such right may be barred by an unreasonable delay in exercising it; a party holding such an equitable right cannot delay its exercise until time shall demonstrate whether or

not its right is of sufficient value to warrant its exercise, but, on the contrary, the very fact that the property has increased in value during his delay is an important factor in invoking the doctrine of laches."

[12] We agree with the Court of Appeals that the evidence of abandonment by Bryan, followed by the long delay of the plaintiff, and those under whom it claims, in asserting its alleged right to take sand and gravel from the tract ultimately selected by it, coupled with evidence that the defendant had in the meantime cleared the land and removed therefrom much of the overburden, which work was necessary in order to have access to the sand and gravel thereunder, fully justified the submission to the jury of the issue of laches.

We find no error in the decision of the Court of Appeals which would justify a reversal thereof.

No error.