607 P.2d 126

**J. W. JONES CONSTRUCTION CO., Appellant,**

v.

**REVENUE DIVISION, DEPARTMENT OF TAXATION AND REVENUE, Appellee.**

**No. 3862.**

Court of Appeals of New Mexico.

Nov. 6, 1979.

Paull Mines, Poole, Tinnin & Martin, Albuquerque, for appellant.

Jeff Bingaman, Atty. Gen., Richard M. Kopel, Sp. Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WALTERS, Judge.

This is an appeal from the Decision and Order of the Revenue Division, Department of Taxation and Revenue (Department) denying Jones Construction Company's (Jones) protest to a resources excise tax assessment, a gross receipts tax assessment, and its claim for a refund of resources excise taxes already paid.

Jones is a highway builder under contract with the State Highway Department for construction of roads and highways. In 1977 the Department directed Jones to file resources excise tax returns for sand and gravel severed and used in its highway construction projects. Jones complied, at the same time filing a protective refund claim of $9,827.99 for gross receipts taxes paid during the same period and based on the same tax base represented in the resources excise tax returns. The refund was allowed

initially, the Department withholding $2,162.12 of the total refund for the purpose of paying the resources excise tax it assessed pursuant to the returns Jones was ordered to file. Approximately two months later the Department changed its mind and assessed the taxpayer the amount it had refunded, apparently ruling that Jones was severing under the Resources Excise Tax Act rather than performing a service, and was thus liable for the entire gross receipts tax as well as for the resources excise tax withheld from the refund.

The taxpayer timely protested the additional gross receipts tax assessment and claimed a refund for the resources excise tax paid by the $2,162.12 earlier withheld. Through its hearing officer, the Department denied Jones's claim for refund, finding it liable for the entire gross receipts tax assessed, and holding that the subsequent assessment, although shown as a service tax, was a proper assessment of resources excise tax.

In this appeal, Jones argues that the tax on the sand and gravel in issue is subject either to the gross receipts tax or to the resources excise tax, but not both. Since Jones uses sand and gravel both from Highway Department-designated pits and from contractor-designated pits, it contends the analysis of any taxes due must be viewed with that fact in mind. Material from contractor-designated pits must be approved by the Highway Department for use in construction under contracts with the Highway Department; and Jones is permitted to use only such materials from the Highway Department-designated pits as is severed for completion of the specific project under construction. The Highway Department negotiates with the landowner for a royalty payment on all sand and gravel extracted, and agrees "to pay or cause to be paid" the amount of royalty due the landowner. As a practical matter, the contract between Jones and the Highway Department requires Jones to make the royalty payment contracted for by the Highway Department with the landowner, based upon the quantities of material used on the highway

project. Jones must use Highway Department-designated pit material unless the department grants written authority to use the contractor-designated pit material.

The Resources Excise Tax Act, §§ 7–25–1 through 7–25–9, N.M.S.A.1978, imposes a "resources tax" upon a severer for the privilege of severing natural resources; a "processors tax" upon a processor for the privilege of processing natural resources; and a "service tax" on the service charge of any person severing or processing natural resources owned by another person.

"Severer" is defined in § 7–25–3 G as:

any *person* engaging in the business of severing natural resources that he *owns*, or any *person* who is the *owner* of natural resources and who has another person perform the severing of such natural resources.[1]

Section 7–25–3 E defines a "processor" to be:

any *person* engaging in the business of processing natural resources that he *owns*, or any *person* who is the *owner* of natural resources and who has another person perform the· processing of such natural resources.

The Act does not define "owner," so we rely on case law which has, in mineral matters, considered the interest of one who has leased mineral lands or contracted to pay royalties for the privilege of extracting minerals for his use. It was said, in *Tri-Bullion Corp. v. American Smelting & Refining Co.*, 58 N.M. 787, 794, 277 P.2d 293 (1954), that "[d]uring the life ́of a lease the lessee holds an outstanding leasehold estate in the premises, which for all practical purposes is equivalent to absolute ownership." The Supreme Court more strongly identified that interest in *Lynch v. Alworth-Stephens Co.*, 267 U.S. 364, 369, 45 S.Ct. 274, 275, 69 L.Ed. 660 (1925), as conferring upon the lessee the exclusive possession of the deposits and the valuable right of removing and "reducing the ore to ownership."

In Thornton, Law of Oil and Gas (4th ed.), the author defines "royalty" as a sum paid after the production of oil and minerals have been "*reduced to possession.*" The meaning of "own" is stated in Webster's Third New International Dictionary (1976 ed.) as:

to have or hold as property or appurtenance: have a rightful title to, whether legal or natural: POSSESS. . . .

■ Under these definitions, it is only possible to conclude that the Highway Department was the owner of the sand and gravel processed or severed, by reason of its various leases with private landowners, Indian tribes, the State of New Mexico and the federal government to obtain Highway Department-designated pits. This is so because Jones was merely fulfilling the Highway Department's obligation to pay; Jones had no right to use or alienate any of its production for purposes other than the particular job it was working on, and then only in such amount as was necessary to and approved for that specific project. There were no assignments to Jones by the Highway Department of its rights under the various leases, and Jones was not a party to any pit agreements between the Highway Department and the landowners. On the other hand, the Highway Department had the right to designate portions of the pit to other projects and other contractors at any time.

Since the Highway Department and not Jones was the "owner" of the severed sand and gravel, Jones cannot be held liable for the resources tax or the processor's tax for the sand and gravel taken from Highway Department-designated pits. Jones is not excused from payment of those taxes for any materials taken from contractor-designated pits for which it negotiates to pay royalties, unless it is entitled to the deductions under § 7–25–3 I which we discuss later in this opinion.

■ Is Jones liable for the "service tax"? This tax is imposed under § 7–25–6 A, which reads:

For the privilege of severing or processing in New Mexico natural resources that

---

**1.** All emphasis shown herein in quotations of the statutes has been added.

are owned by *another person*, and are not otherwise taxed by . . . 7–25–4, 7–25–5, N.M.S.A.1978 . . . of the Resources Excise Tax Act, there is *imposed on the service charge* of any person severing or processing natural resources that are *owned by another person* an excise tax at the same rate that would be imposed on an owner of natural resources for performing the same function.

The Act [§ 7–25–3 C] defines "person" to be:

any individual, estate, trust, receiver, cooperative association, club, corporation, company, firm, partnership, joint venture, syndicate or other entity.

And "service charge" is declared at § 7–25–3 F as meaning:

the total amount of money or the reasonable value of other consideration received for severing or processing any natural resource by any person who is not the owner of the natural resource.

We note, first, that Jones does not receive any "money" or "other consideration" for the privilege of severing or processing sand and gravel from Highway Department-designated pits. Rather, Jones is obligated to pay the royalties promised by the Highway Department in its leases with the landowners based on amounts determined by the Highway Department as having been used in the project being completed by Jones for the Highway Department. Since no money or other consideration is received by the taxpayer for the privilege of severing or processing the sand and gravel from the Highway Department-designated pits, there is no "service charge" upon which a service tax may be imposed.

■ Additionally, the service tax is imposed on one who severs natural resources "owned" by another "person." The State Highway Department, as the owner, is not a "person" as designated in § 7–25–3 C; therefore, it seems clear that the Legislature intended to exempt from service taxes those contractors who sever natural resources belonging to State agencies where no service charges are made or collected.

The Department was in error in determining that Jones was the owner of the material severed from Highway Department-designated pits, and the assessment of resources excise and service taxes, penalty and interest, on that material must be reversed. Likewise, any penalty and interest assessed against gross receipts taxes allegedly unpaid, by reason of the Department's incorrect allocation of some of the refunded taxes to the taxes erroneously claimed due under the resources excise tax section, was an improper assessment.

■ We come now to Jones's contention that it is entitled to a deduction from gross receipts tax for any resources excise tax it may be required to pay or, alternatively, it is exempted from the resources excise tax under § 7–25–3 I because it sells the sand and gravel taken from its own designated pits to a State agency.

We agree with the Department that Jones did not sell the sand and gravel separate and apart from the total construction contract price, and therefore he cannot claim the benefits of a "sale" under § 7–25–3 I. Such a determination, however, does not preclude his entitlement to the exemption from gross receipts tax allowed under § 7–9–35, N.M.S.A.1978, which provides:

When a privilege tax is imposed by the Resources Excise Tax Act, the provisions of the act shall apply and determine the *full measure of tax liability* for the privilege of engaging in the business stated in the act and *no provision of the Gross Receipts and Compensating Tax Act shall apply to or create a tax liability for such privilege*, except as is provided in section 7–25–8, N.M.S.A.1978

Jones does not come within the exception of § 7–25–8 which subjects sale of non-fissionable natural resources to the Gross Receipts and Compensating Tax if it is not sold for subsequent sale or use in a manufactured product; therefore, being liable for the severance tax, the above quoted statute must apply. The Department classified taxpayer's severing as "construction" under the Gross Receipts Act and denied Jones's claim

for a deduction. That portion of the Department's decision is contrary to our decision in *Patten v. Bureau of Revenue*, 86 N.M. 355, 524 P.2d 527 (Ct.App.1974), wherein we held that the Bureau [now the Department] was in error in classifying severing work as "construction" simply because the overall project would fit the definition of "construction" under the Gross Receipts Act. Where both types of work, severing and construction, occur at the same time or on the same job, *Patten* makes it clear that the classification of "construction" is not justified, and that receipts from severing are exempt from gross receipts tax.

■ The Department found that the taxable value of the sand and gravel used in the Highway Department projects was 45¢ per cubic yard. The amount of the sand and gravel taken from contractor-designated pits is ascertainable. Jones was entitled to deduct that amount from his taxable gross receipts.

Deciding as we do that Jones was not liable under the Resources Excise Tax Act for sand and gravel used from the Highway Department-designated pits, but is liable for the resources tax on materials taken from contractor-designated pits and is entitled to an exemption from gross receipts tax to that extent, it is unnecessary to discuss the other points raised by Jones.

The decision of the Department is reversed. Jones is relieved of any obligation to pay resources excise and service taxes, penalty, and interest, on sand and gravel extracted and used on the project from Highway Department-designated pits. It is liable for any resources tax unpaid on materials extracted from contractor-designated pits and used on the highway projects. Concommitantly, Jones is entitled to the exemption from gross receipts tax of the amount of contract receipts attributable to its use of contractor-designated pit material at the rate of 45¢ per cubic yard.

IT IS SO ORDERED.

SUTIN, J. (specially concurring).

HERNANDEZ, J., concurs.

SUTIN, Judge (specially concurring).

I concur.

It has been commonly said that concurring and dissenting judicial opinions should be stated in two words: I concur or I dissent. The opinion must be severely restricted in length to accommodate the expense involved in publication and to avoid dicta, ambiguity and confusion. I violate that aphorism. When a party below presents a matter of first impression on appeal, the argument should be answered to meet the challenge of tomorrow.

The Director of the Revenue Division takes the position that Taxpayer is liable for the Resources Excise Tax because Taxpayer "owned" the sand and gravel produced from Highway Department designated pits. This concept of liability is based upon the doctrine of "profit a prendre." This theory was not raised before the hearing examiner.

"Profit a prendre" is defined as "[a] right exercised by one man in the soil of another, accompanied with participation in the profits of the soil thereof. A right to take a part of the soil or produce of the land." Black's Law Dictionary, 1376 (Rev. 4th Ed. 1968). This doctrine constitutes an interest in real property in the nature of an incorporeal hereditament. (Anything, the subject of property, which is inheritable and not tangible or visible). *Atlantic Oil Company v. County of Los Angeles*, 69 Cal.2d 585, 72 Cal.Rptr. 886, 446 P.2d 1006 (1968). It is created by grant; it cannot be created by parole. *Builders Supplies Company of Goldsboro, N. C. v. Gainey*, 14 N.C.App. 678, 189 S.E.2d 657 (1972), aff'd 282 N.C. 261, 192 S.E.2d 449 (1972); 25 Am.Jur.2d *Easements and Licenses*, § 4 (1966). It comes within the purview of the Statute of Frauds.

To subject taxpayer to double taxation, the Director relies on *Babler Bros. Inc. v. Hebener*, 267 Or. 414, 517 P.2d 653 (1973). *Babler* was engaged in road and highway construction. It secured a contract from the Oregon State Highway Department to

construct a section of highway. *Babler entered into a contract with Hebner* to purchase rock from Hebner's quarry and agreed to remove the rock, crush and stockpile it on Hebner's premises. In a controversy between Babler and Hebner, the trial court found that Babler had *title* to the rock, under the concept of "profit a prendre" when severed from the land.

The Director says:

. . . Though there is no third party, the facts and holding in . . . [*Babler*] are analogous to the situation in the instant case. . . . .

The authorities cited do not approach this problem except by way of assignment. *They do establish that "profit a prendre" requires a severance and removal by the purchaser or an assignee.* The analogy is far fetched. For a historical review, see Hahner, *An Analysis of Profits A Prendre*, 25 Or.L.Rev. 217 (1946).

In the instant case, the State Highway Department, not Taxpayer, had a contract with the owner of the land to remove sand and gravel. When it was severed, *title* was in the Highway Department, not Taxpayer.

For Taxpayer to fall within the doctrine, Taxpayer must obtain from the owner of the soil, in writing, the power and privilege to sever and remove the sand and gravel. No such legal relationship existed. All of these rights were vested in the State Highway Department which entered into leases or permits for sand and gravel with the owners. One lease provided:

2. *The right and privilege of the lessee to remove the material shall be exclusive* in the sense that the lessor will not grant said rights and privileges to any one else during the term of this lease.

\* \* \* \* \* \*

4. *This lease is non-assignable.* Lessee *may permit* a contractor operating under a contract entered into with Lessee, to remove designated material as specified by lessee. . . . [Emphasis added.]

In a 16 page Decision and Order, the Director began a process of reasoning, based on custom and practice, that third party contractors, not the Highway Department were going to sever the sand and gravel used for highway projects; that the lease prohibited an assignment of the agreement to third parties, but it was not designed to prohibit contractors, performing construction services for the Highway Department, from entering designated premises and severing sand and gravel; *that the non-assignment clauses must be read to prohibit a total assignment of all rights; that it is not inconsistent with the non-assignment clause to assign non-exclusive partial rights to contractors for limited purposes.*

The Director concluded that since the Highway Department transferred or assigned some of its rights to Taxpayer and submitted a letter saying Taxpayer owned the severed material, Taxpayer was subject to the resources tax. I disagree.

The Highway Department did not assign any rights to Taxpayer. To permit a contractor to remove designated material as specified by the Highway Department is not an assignment of *an interest in real estate.* The Highway Department designated the pit to be sure that the sand and gravel removed would meet its specifications. This material could not be used by Taxpayer without approval. When removed, it was owned by the Highway Department. When used by Taxpayer, the sand and gravel were part of its construction process.

"Profit A Prendre" requires a severance and removal by the purchaser or some one to whom an assignment of all or a portion of this interest in real estate is made, provided, however, that the agreement with the owner of the land does not demand that any assignment be approved by the owner. The Director even denied that "The landlords here apparently are not concerned with whom is going to sever the sand and gravel . . . ." One sand and gravel permit with an Indian Pueblo agency provided:

7. Assignment.—The Permittee [Highway Department] agrees not to as-

sign the Permit or any interest therein by an operating agreement .or otherwise, not to sublet any portion of the permitted premises, *except with the approval of the Secretary of the Interior or* his authorized representative. [Emphasis added.]

In effect, the Highway Department severed and removed the sand and gravel by use of Taxpayer's personnel and equipment rather than its own. When severed and removed, the material was owned by the State, not the Taxpayer.

A "severer" means any person engaged *in the business* of severing natural resources. Section 7–25–3, N.M.S.A.1978. An excise tax is imposed on the "severer" of natural resources. Section 7–25–4. The Director decided that Taxpayer was engaged *in the business of building roads and highways* for the New Mexico State Highway Department. He was uncertain of his position with reference to the resource tax. He decided that. Taxpayer was liable for the resources tax *or* the service tax. If the Taxpayer "owned" the severed material, Taxpayer was subject to the resource tax. The Director, however, did not decide that Taxpayer was engaged in the business of severing natural resources. The reason is that Taxpayer was, in effect, acting only for and on behalf of the Highway Department.

The blame for this problem rests solely with the fault of the Revenue Department personnel. I shall not restate the harassment under which Taxpayer travelled from May, 1977 to the present time. The Director was not satisfied with the fact that Taxpayer always paid its gross receipts tax. It had to discover additional methods of taxation to wrench taxes from Taxpayer without concern for the old adage that "the power to tax is the power to destroy." The Director and the hearing officer should not interpret words and phrases to suit their fancy. They should not seek to create out of the various agreements a status "in the nature of third party beneficiary contracts." Instead they should use a logical, reasonable and practical interpretation of facts and law in favor of the Taxpayer.

Every reasonable doubt should be exercised in favor of Taxpayer, especially those who have accepted the burdens of taxation with alacrity and honesty.

The Revenue Department should not seek unfairly to impose, not only additional burdens of taxation, but also subject Taxpayer to payment of attorney fees, costs and expenses. The Revenue Department should assume payment of these obligations. If the Revenue Department wanted to assume the appearance. of impartiality, it would agree to be bound by the Administrative Procedures Act, § 12–8–1, et seq., N.M.S.A. 1978. This was suggested long ago to no avail.