524 P.2d 527

**L. A. PATTEN, Appellant,**

**v.**

**The BUREAU OF REVENUE of the State of New Mexico, Appellee.**

**No. 1319.**

Court of Appeals of New Mexico.

June 12, 1974.

Rehearing Denied July 1, 1974.

**356**

Wayne D. Calderwood, Las Vegas, for appellant.

David L. Norvell, Atty. Gen., Vernon O. Henning, Bureau of Revenue, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge.

The issue in this gross receipts tax case is whether Patten's activities amounted to "severing," as that word is used in the applicable statute.

By contract, Patten engaged in mining activities at the location known as Continental No. 1 on property of United States Smelting Refining and Mining Company near Fierro, New Mexico. Unless exempted, these activities were a construction service and the receipts derived from the activities were taxable under our gross receipts law. See §§ 72–16A–3, ¶¶ C(11), E, and K, and 72–16A–4, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1973). Section 72–16A–12.23, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1973) states that when a privilege tax is imposed by the Resources Excise Tax Act, that act applies and determines the "full measure" of tax liability for the privilege of engaging in the business stated in the act.

The Resources Excise Tax Act is compiled as §§ 72–16A–20 through 72–16A–29, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp. 1973). Patten's mining activities were in connection with copper ore and, thus, in connection with a natural resource. Section 72–16A–22(B), supra. His activities were in connection with natural resources "owned by another person." The "service tax" provided by § 72–16A–25, supra, has been paid.

The service tax, however, is applicable only if Patten's receipts resulted from the "severing or processing" of a natural resource. Patten claims his activities amounted to "severing," that his receipts were subject to the service tax (which is a privilege tax under § 72–16A–25, supra), and, thus, § 72–16A–12.23, supra, exempts his receipts from the gross receipts tax. The Commissioner of Revenue disagreed and denied Patten's protest of the Bureau's assessment of gross receipts tax, penalty and interest for the audit period involved. Patten appeals the Commissioner's decision.

Patten's records, examined by the Bureau auditor, included "settlement sheets" from the mining company and general ledger postings. These records distinguished "development" work from mining. The auditor testified that he discussed development work with Patten. According to the auditor, Patten stated development work "was different from mining because it was more or less digging toward the ore body and the way I understood it, they had to dig toward a big ore body in order to get the ore out."

The tax assessment is based on Patten's receipts for development work. The Bureau's position is that development work does not amount to "severing" a natural resource, thus, the service tax is not applicable and the gross receipts tax applies to the receipts from development work.

The practical difference between the two positions is the tax rate applicable to the receipts involved. Compare § 72–16A–4, supra, with § 72–16A–23, supra.

Certain mining industry terms require explanation. An exhibit introduced by Patten, not contradicted, defines a "shaft" as a vertical or inclined excavation in a mine extending downward from the surface or from some interior point as a prin-

cipal opening through which the mine is exploited. A "drift" is a horizontal opening in or near an ore body and parallel to the course of a vein or long dimension of the ore body. See Empire Star Mines Co. v. Butler, 62 Cal.App.2d 466, 145 P.2d 49 (1944). A "winze" is a vertical or inclined opening sunk from a point inside a mine for the purpose of connecting with a lower level or of exploring the ground for a limited depth below a level. A "raise" is a vertical or inclined opening driven upward from a level to connect with the level above, or to explore the ground for a limited distance above one level. The Bureau defines an "adit" as a horizontal passage used for access, haulage, drainage, ventilation and similar items. See Kramer v. Taylor, 200 Or. 640, 266 P.2d 709 (1954). According to the evidence, a "stope" is an irregularly shaped room inside the mine.

The evidence is undisputed that the Continental No. 1 is an old mine; that a preexisting shaft was not involved in Patten's workings. The evidence is also undisputed that there was a preexisting adit which Patten used but on which Patten did no work. The evidence is also undisputed that none of Patten's work involved driving or digging a prospect drift; that is, a drift in search of ore.

Patten's development work did involve the driving or digging of drifts, some raises and possibly a winze. The tax assessment is based on receipts from this development work. Receipts from "mining" were receipts received for removing ore from a "stope." The Bureau does not claim that receipts from stoping are subject to the gross receipts tax.

The evidence is undisputed that the drifts, raises and winze were dug or driven into a known ore body that had been previously located by the mining company; that Patten's first penetration was into the ore body. Material removed during the development work was not distinguished from material removed from stopes. Total material removed from all work exceeded 183,000 tons. Only 1,000 tons of this material were not processed at the mining company's mill.

The evidence is undisputed that after penetrating the ore body by digging drifts, the drifts were expanded into stopes so that eventually the drifts were gone; that as a result, the area mined by Patten is "just one big room."

Section 72–16A–22(H), supra, defines "severing" to mean "mining, quarrying, extracting, felling or producing any natural resource in New Mexico for sale, profit or commercial use." The undisputed evidence is that Patten's development work extracted a natural resource in New Mexico; no claim is made that this was not done for profit or commercial use.

The Bureau's response to the undisputed evidence showing a "severing" goes both to the facts and the law.

There is evidence that development work is different than "mining" or "stope" work. The area being worked differs in size; the method of working the area is different. There is evidence that development work is paid by the linear foot while stope work is paid on the basis of tonnage and at a lesser rate than development work. The differential in the price paid is explained; development work is paid higher because of its more limited work area and the requirements of that work. If development work was paid at the same rate as stope work, Patten "couldn't make any money or couldn't even break even."

Conceding the above differences between development work and stope work, they do not show that the development work in this case was not "severing" as defined in § 72–16A–22(H), supra. Specifically, the evidence of differences between development work and stope work does not raise a conflict in the evidence. The undisputed evidence, referred to above, is that Patten's development work was "severing" under the statute.

Concerning the law, the Bureau's position is that development work which comes within the definition of construction in § 72–16A–3(C)(11), supra, cannot be consid-

ered as severing because it was not a part of the business of severing. The undisputed evidence answers this; severing was taking place as the development work was performed. In this case none of Patten's work was preliminary to or preparatory for severing. The initial penetration was into a known ore body.

The Bureau contends that if Patten's development work is severing, then construction work in mines has been effectively eliminated from the gross receipts tax law. Its position is that development work amounting to construction, as defined in § 72–16A–3(C)(11), supra, is a phase of mining which must be considered separate and distinct from severing. Thus, the Bureau would limit the statutory definition of severing to the extraction of a natural resource not involving construction.

Assuming that all of Patten's receipts for development work were receipts for construction, the issue in this case is whether an exemption applies. The exemption provided by § 72–16A–12.23, supra, applies in this case if Patten's development work was severing as defined in § 72–16A–22(H), supra. Contrary to the Bureau's position, all receipts from development work, which is also "construction," are not exempted. There may be receipts from construction work not amounting to severing.

The undisputed evidence is that Patten's development work was severing. Because the work was severing, receipts from the development work were exempted from the gross receipts tax.

The Commissioner's Decision and Order is reversed because not supported by substantial evidence. Section 72–13–39(D)(2), N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp. 1973).

Patten is to recover his costs on appeal. See Rule 27 of Rules Governing Appeals.

It is so ordered.

HENDLEY and SUTIN, JJ., concur.