592 P.2d 191

**CARTER & SONS, INC., Appellant,**

v.

**NEW MEXICO BUREAU OF REVENUE, Appellee.**

No. 3392.

Court of Appeals of New Mexico.

Feb. 20, 1979.

Joe R. G. Fulcher, Jeffrey W. Loubet, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, for appellant.

Jeff Bingaman, Atty. Gen., Jan E. Unna, Special Asst. Atty. Gen., Dept. of Taxation & Revenue, Santa Fe, for appellee.

## OPINION

HERNANDEZ, Judge.

This is an appeal from the decision and order of the Commissioner of Revenue assessing gross receipts tax on two, hauling and road maintenance, of several operations performed by the taxpayer under its contract with Duke City Lumber Company, Inc. (Duke) for a period from January 1, 1974 through September 30, 1976.

Most of the pertinent facts are set forth in the findings of the Commissioner:

"3. This taxpayer has been engaged in the logging business in New Mexico for a number of years. During 1975 and 1976, the taxpayer had contracts with Duke City Lumber Company, Inc., (Duke) which provided that the taxpayer was to cut, limb, skid, and load timber located on Federal land and haul it to Duke's sawmill in Espanola, New Mexico. Duke had previously entered into agreements with the United States Forest Service which enabled Duke to cut and remove designated timber and Duke had contracted with the taxpayer to perform specified functions.

"4. From time to time the Forest Service advertises the proposed sale of specified timber located in the National Forests and sets a minimum price at which the timber will be sold. Lumber companies, such as Duke, bid on these sales and the successful bidder must comply with the rules of the Forest Service; this includes the building of temporary roads, and maintenance of present roads, the disposal of slash and exercising erosion control. When Duke contracts with the taxpayer, the taxpayer is required to perform these functions.

"5. When Duke contracts with the taxpayer, Duke agrees to pay the taxpayer a specified amount of money—based on per M, (1,000 feet) Gross, Less Culls,—for all logs cut, skidded, loaded and hauled to the Espanola mill. The taxpayer gets paid only if the timber is delivered to the mill.

"6. There is no breakdown in the contract of the money paid for each function performed by the taxpayer; neither Duke's records nor the taxpayer's records segregate payments made or received for the several functions performed under the contract."

Section 7–9–4, N.M.S.A.1978 (formerly § 72–16A–4, N.M.S.A.1953 (Supp.1975)) of the Gross Receipts and Compensating Tax Act provides in pertinent part:

"A. For the privilege of engaging in business, an excise tax equal to four percent of gross receipts is imposed on any person engaging in business in New Mexico.

"B. The tax imposed by this section shall be referred to as the 'gross receipts tax.'"

Section 7–9–35, N.M.S.A.1978 (formerly § 72–16A–12.23, N.M.S.A.1953 (Supp.1975)) of the Act provides:

"When a privilege tax is imposed by the Resources Excise Tax Act * * *, the provisions of the act shall apply and determine the full measure of tax liability for the privilege of engaging in the business stated in the act and no provision of the Gross Receipts and Compen-

sating Tax Act shall apply to or create a tax liability for such privilege * * *."

The following are the pertinent parts of the Resources Excise Tax Act necessary to the discussion of taxpayer's points of error.

Section 7 -25- 3, N.M.S.A.1978 (formerly § 72 -16A--22, N.M.S.A.1953 (Supp.1975)):

"B. 'natural resources' means timber and any product thereof and any metalliferous or nonmetalliferous mineral product, combination or compound thereof, but does not include oil, natural gas, liquid hydrocarbon individually or any combination thereof or carbon dioxide;

* * * * * *

"F. 'service charge' means the total amount of money or the reasonable value of other consideration received for severing or processing any natural resources by any person who is not the owner of the natural resource. However, if the money received does not represent the value of the severing or processing performed, 'service charge' means the reasonable value of the severing or processing performed;

"G. 'severer' means any person engaging in the business of severing natural resources that he owns, or any person who is the owner of natural resources and who has another person perform the severing of such natural resources;

"H. 'severing' means mining, quarrying, extracting, felling or producing any natural resource in New Mexico for sale, profit or commercial use; and

"I. 'taxable value' means the value after severing or processing, without deduction of any kind other than specified in this subsection, of any natural resource severed or processed in New Mexico.
* * * "

Section 7-25 -4, N.M.S.A.1978 (formerly § 72–16A–23, N.M.S.A.1953 (Supp.1975)):

"A. For the privilege of severing natural resources, there is imposed on any severer of natural resources in New Mexico an excise tax at the following rates on the taxable value of the natural resources:

(1) All natural resources except potash and molybdenum—three-quarters of one percent;

(2) potash—one-half of one percent; and

(3) molybdenum—one-eighth of one percent."

Section 7 -25--6, N.M.S.A.1978 (formerly § 72 -16A--25, N.M.S.A.1953 (Supp.1975)):

"A. For the privilege of severing or processing in New Mexico natural resources that are owned by another person, and are not otherwise taxed by Sections 4 and 5 [7-25--4, 7-25–5 NMSA 1978] of the Resources Excise Tax Act, there is imposed on the service charge of any person severing or processing natural resources that are owned by another person an excise tax at the same rate that would be imposed on an owner of natural resources for performing the same function.

"B. The tax imposed by this section shall be referred to as the 'service tax.' "

Taxpayer alleges two points of error. The first being that all of the services performed by it are either "severing" or "processing" subject to the service tax. The second point is that all of the receipts received by it are exempt from the gross receipts tax.

Essentially, the Bureau's argument is that the taxpayer's activities should be separated into two parts for purposes of taxation. Stated differently, the "road maintenance" and "hauling" activities of the taxpayer are not an integral part of "severing" as contemplated by § 7–25–6A, supra. Why just into two parts? Why not into five parts (felling, building of temporary roads, maintenance of present roads, disposal of slash and erosion control); it would be just as logical or illogical. We do not believe that this is what the legislature intended. Looking again at § 7–25–3(H), supra, it states in pertinent part that: " 'severing' means * * * felling * * * for sale, profit or commercial use * * *." A tree at the location where it was felled would have very little value in comparison with its value at a lumber mill. The cost of felling

a tree is just a small part of what makes up the total cost of preparation for sale or commercial use. All of these five activities are integral parts of "severing" in this situation.

The primary purpose of the Resources Excise Tax Act is obviously to encourage the development of the extractive industries of the state because the rates imposed are a fraction of the Gross Receipts Tax. To adopt the narrow interpretation advocated by the Bureau would not be consonant with the basic purpose of the Act. "The chief aim of statutory construction is to arrive at true legislative intent." *Montoya v. McManus,* 68 N.M. 381, 388, 362 P.2d 771, 776 (1961). The Forest Service dictated the terms and conditions for severing the timber in question. None of the several activities prescribed could be eliminated. The Forest Service had roughly estimated the cost of each activity *solely* for the purpose of setting the minimum bid figure. It is our decision that "road maintenance" and "hauling" were an integral and indispensable part of taxpayer's activity of severing and as such were exempt from the Gross Receipts Tax by the provisions of § 7–9–35, supra.

The decision and order of the Commissioner is reversed and the Bureau's interpretive regulation G.R. Regulation 12.23:3 is declared void, insofar as it applies to the facts herein.

IT IS SO ORDERED.

SUTIN, J., specially concurring.

LOPEZ, J., concurs.

SUTIN, Judge (specially concurring).

I concur.

Although the record in this case is lengthy, the pertinent facts are simple. Taxpayer contracted with Duke City Lumber Co. to cut, limb, skid, load and haul timber from United States Forest Service lands to Duke City's mill, and it had to blade Forest Service roads leading to timber sites where trees were cut. This was called "road maintenance."

The Bureau seeks to tax for gross receipts obtained from (1) hauling timber from the landing to the mill and (2) road maintenance. Taxpayer argues that these two types of gross receipts are exempt from the gross receipts tax. I agree. Section 7–9–35, N.M.S.A.1978 reads in pertinent part:

> When a privilege tax is imposed by the Resources Excise Tax Act * * * no provisions of the Gross Receipts * * * Tax Act shall apply to or create a tax liability for such privilege * * *. [Emphasis added.]

Under the Resources Act, a tax is levied on the privilege of severing and processing natural resources. Section 7–25–2, N.M.S. A.1978. Timber is a natural resource, and "severing" includes *felling timber for commercial use.* Section 7–25–3(D) and (H). Taxpayer was the person who severed timber for Duke City Lumber Co. Section 7–25–3(G). The tax imposed is a "service tax."

The dispositive question is the nature and extent of the "privilege" referred to in § 7–9–35. The Bureau says that the "privilege" covers only the *felling of timber,* not hauling or road maintenance. I disagree.

Many views of mine have been expressed in *Cardinal Fence Co., Inc. v. Commissioner, Bur. of Rev.,* 84 N.M. 314, 502 P.2d 1004 (Ct.App.1972), Sutin, J. dissenting; *Title Services, Inc. v. Commissioner of Revenue,* 86 N.M. 128, 520 P.2d 284 (Ct.App.1974), Sutin, J. dissenting; *Co-Con, Inc. v. Bureau of Revenue,* 87 N.M. 118, 529 P.2d 1239 (Ct.App.1974), Sutin, J. dissenting; *Gathings v. Bureau of Revenue,* 87 N.M. 334, 533 P.2d 107 (Ct.App.1975), Sutin, J. dissenting; *Advance Schools, Inc. v. Bureau of Revenue,* 89 N.M. 133, 548 P.2d 95 (Ct.App.1975), Sutin, J. dissenting, rev'd 89 N.M. 79, 547 P.2d 562 (1976); *Ealey v. Bureau of Revenue,* 89 N.M. 174, 548 P.2d 454 (Ct.App. 1975), Sutin, J. specially concurring, rev'd 89 N.M. 160, 548 P.2d 440 (1976); *Western Elec. Co. v. N. M. Bureau of Rev.,* 90 N.M. 164, 561 P.2d 26 (Ct.App.1976), Sutin, J. specially concurring. I adhere to those views which are:

1. Tax statutes have definitions that create ambiguities which create a battle of the dictionaries. The purpose of the statute should not be accomplished by "semantic niggling." If there is ambiguity or doubt, it is not the fault of the taxpayer.

2. Where an exemption is claimed, the statute should be liberally construed in favor of the taxpayer because the exemption is granted for a beneficent purpose. We should protect the taxpayer by judicial construction.

3. The Commissioner should not play with the statute like a chess game. He sits in a quasi-judicial position and should seek to do justice and avoid injustice to taxpayers. He is both the judge and attorney for the Bureau. His qualifications are not fixed by law. He must not rely only on the evidence presented by his attorney, nor favor the State over the taxpayer. He must try to be objective in nature.

4. We do not view the evidence in the light most favorable to the decision. Our duty is to look at the whole record.

5. The statute does not delegate authority to the Commissioner to enact legislation by regulation which directly taxes a specific segment of business.

6. All doubts as to the meaning and intent of a tax statute must be construed in favor of the taxpayer.

7. Every taxpayer is entitled to a fair and impartial hearing.

My disagreement with the Bureau centers around the narrow and strict interpretation of the words "felling timber for commercial use." The Bureau concedes that "skidding" constitutes "severing." To "skid" is "to drag (logs) from the stump to a landing, skidway, or mill." Webster's Third New International Dictionary, p. 2133 (1966). An expert witness testified that "to haul" and to "skid" were quite similar. "They are the same in that they are a hauling function." "There's very little difference between skidding and hauling logs, other than the fact you've got a different piece of equipment."

"Felling timber for commercial use" means "hauling timber from the stump to the mill." In order to do so, taxpayer of necessity must blade Forest Service roads leading to timber sites.

The Bureau tried to burden a person engaged in mining activities with the gross receipts tax instead of the service tax. It contended the taxpayer's work was a construction service instead of "mining" a natural resource. This court said "no." *Patten v. Bureau of Revenue,* 86 N.M. 355, 524 P.2d 527 (Ct.App.1974).

My criticism of the Commissioner's attitude toward taxpayers, heretofore expressed, continues to the instant case. His attitude is: "Let the courts decide." Although not a financial burden on the Bureau, it is fractious and a conniption to the taxpayer to try and appeal such cases.